DONHAM *v.* E.L.B., INC., D.B.A.
LINDALE AUTO PARTS ET AL.

(No. 82-CV-0646—Decided May 17, 1983.)

Court of Common Pleas of
Clermont County.

*Mr. Thomas R. Herman,* for plaintiff.
*Mr. Robert A. Jones* and *Mr. Peter Swenty,* for defendants.

RINGLAND, J. This matter came for hearing on plaintiff's complaint for declaratory judgment and injunction on April 4, 1983. The court finds from the evidence that the property located at 2976 State Route 132 in Ohio Township had previously been owned by one "Rocyna" from October 16, 1964 to August 8, 1978. From 1971 to August 8, 1978, the property was validly considered a nonconforming use under the zoning resolution of Ohio Township as defined in Paragraph 17, page 6 thereof. Because of the fact that the nonconforming use existed · before the adoption of the resolution, the township trustees permitted it to be operated as a junkyard in a district designated as Business B which prohibits

junkyards. Admittedly, the trustees did not have a definition of junkyard in the resolution to work with, but relied upon the definition of "junk yard" and "junk" under R.C. 4737.05. The facts are uncontroverted that the previous owner, Rocyna, sold the real estate on or about August 8, 1978, and thereafter the real estate changed hands several times up to the present date. The Ohio Township zoning resolution provided in Article 4, page 8 that any nonconforming use voluntarily discontinued for twelve months or more shall in the future be in conformity with the zoning regulations; R.C. 519.19, however, required a two years' discontinuance. Both parties agree that the zoning resolution cannot be more restrictive than the Ohio Revised Code and therefore the trustees attempted to establish that for a period of two years there was a voluntary discontinuance of such nonconforming use. The parties stipulated that junkyard licenses were issued from 1976. to the present, as follows: 1976 and 1978, under the name of Rocyna, d.b.a. Lindale Auto Parts; 1979 to 1981, under the name of Joseph L. Lehr, d.b.a. Lindale Auto Parts; and 1982 to present, E.L.B., d.b.a. Lindale Auto Parts. The parties stipulated also that on June 25, 1982, E.L.B. applied for and obtained a vendor's license for used salvage, but between that date and 1978 there had been no vendor's license issued.

The issue therefore before this court is whether between the fall of 1977 and the fall of 1979 there was a voluntary discontinuance of the prior nonconforming use requiring a return to the Business B designation and the prohibition of further use of junkyards on that location.

While several of the plaintiff's witnesses did not see any operation of a junkyard during this period, they did not view the area by going on site or view it for any extended period of time. Further it is indicated by other witnesses that there were junked items on the property continuously since 1978, although such items

were not seen by all witnesses from the roadway. During the years 1977 and 1978, there were old tires on the property, and in fact there was an old earth mover which was not operable and which fit the definition of "junk" under the Ohio Revised Code. A deputy from the sheriff's office was on the property in September 1979, and indicated that he saw a person working on automobile parts, and a rusting earth mover. The same deputy saw automobile parts on the property in February 1980. Witness Harper indicated that when he purchased the junkyard in September 1978, he in fact did clean up the junk that could not be sold but still retained the property to sell parts from heavy equipment which he stored there. He testified that this equipment included one rusting earth mover that apparently was there from the sale from Rocyna; and that for a period of fifteen months beginning in the summer of 1978 he came upon the property every day and still had stored on the property tire rims, bolts and auto bodies for sale. After the fifteen-month period, until the middle of 1981, he would arrive on the property from time to time to sell parts from the earth mover, and truck parts, bolts and rubber hoses which were stored on the property. The evidence also indicates that he advertised the earth mover in magazines as well as in the Wall Street Journal in the year 1979. Neighbors also testified indicating that they saw vehicles parked on the property in 1979. Although the building itself was rented for a short time for body repair, the land itself was still used apparently to store junk property, as testified to by Ernst. In the fall of 1981, a fence was built around the junkyard and the yard was used to move other junk items from another junkyard in Hamilton County. In September 1981, it is uncontroverted that the business was operated on a day to day basis as a junkyard.

Plaintiff contends that the exact and specific use of the junkyard prior to 1978 was a commercial junkyard, *i.e.,* buying and selling of used car parts and vehicle bodies as well as storage, and that if this specific use was not followed for a junkyard, that the use was thereby voluntarily discontinued.

R.C. 4737.05(B) defines a "junk yard" as "an establishment or place of business, which is maintained or operated for the purpose of storing, keeping, buying, or selling junk, or for the maintenance or operation of an automobile graveyard, and includes garbage dumps and sanitary landfills."

R.C. 4737.05(C) defines "automobile graveyard" as meaning "any establishment or place of business which is maintained, used, or operated for storing, keeping, buying, or selling wrecked, scrapped, ruined, or dismantled motor vehicles or motor vehicle parts." Plaintiff therefore argues that all the uses described in the operation of a junkyard if existing before the nonconforming use must continue to exist, and that the discontinuance of one or more of the uses is a voluntary discontinuance under R.C. 519.19. In other words, it is argued that if the use was buying, selling and storage, then cessation of buying and selling would be a discontinuance of the use of buying, selling and storage, for only storage would remain as a use.

Assuming *arguendo* that there was no buying or selling of junk from the automobile graveyard during the relevant two-year period, there was sufficient evidence to indicate that the yard was used for storage during that period. The inspection authority, Clermont County Sheriff's office, did issue each year approval for a junkyard license under R.C. 4737.06, and its testimony indicated there were items stored on the property. Admittedly, for one to have a nonconforming use within the meaning of the zoning regulations there must be an actual use of such property as distinguished from a mere contemplated use. *Ohio State Student Trailer Park Co-op., Inc.* v. *Franklin County* (C.P. 1953), 68 Ohio Law Abs. 563. Change of ownership is not considered a change of use. *Akron* v. *Klein* (1960), 171

Ohio St. 207 [12 O.O.2d 331]. Because all zoning regulations are in derogation of the common law, the courts have declared such regulations must be strictly construed. *Windsor* v. *Lane Development Co.* (1958), 109 Ohio App. 131 [10 O.O.2d 356]. Exceptions to the restrictive provisions of the zoning regulations are liberally construed in favor of the landowner. *Lykins* v. *Dayton Motorcycle Club, Inc.* (1972), 33 Ohio App. 2d 269 [62 O.O.2d 382]. Similarly, language in a zoning ordinance defining a permitted use is to be liberally construed in favor of permitting the use proposed by the owner. *State, ex rel. Spiccia,* v. *Abate* (1964), 95 Ohio Law Abs. 94 [29 O.O.2d 310].

R.C. 4737.05(B) provides for "storing, keeping, buying, *or* selling junk, *or* for the maintenance *or* operation of an automobile graveyard." (Emphasis added.) "Automobile graveyard" is a "place of business * * * for storing, keeping, buying, *or* selling wrecked, scrapped, ruined, *or* dismantled motor vehicles *or* vehicle parts." (Emphasis added.) If the legislature intended all activities of a junkyard dealership to continue to remain a particular use it should have phrased the definitions in the conjunctive rather than in the disjunctive and specifically provided a distinction between a "commercial" junkyard and any other type of junkyard. The statute and zoning resolution have not done so.

It is well-established by probative evidence that for all periods during the two-year period there was at least actual storage which was one of the prior uses. There is also evidence that from time to time some buying and selling of junk took place within the two-year period, although on a reduced scale.

The other argument that the plaintiff might suggest is that there was a decrease in volume of business and that this decrease in business constituted an abandonment of the nonconforming use. The courts in Ohio have long held that an increase in business alone does not constitute an unlawful extension of the nonconforming use. *State, ex rel. Zoning Inspector,* v. *Honious* (1969), 20 Ohio App. 2d 210 [49 O.O.2d 289]. The logical extension of this would, of course, be that a decrease in business *per se* is not an abandonment of a nonconforming use and courts in other jurisdictions have so held. *Haller Baking Co's. Appeal* (1928), 295 Pa. 257, 145 A. 77; *Binghamton* v. *Gartell* (1949), 275 App. Div. 457, 90 N.Y. Supp. 2d 556; see 18 A.L.R. 2d 743. Ohio leans in this direction, as is indicated by Judge Taft in *Akron* v. *Klein, supra,* at 216:

"In our opinion, where, as here, a zoning ordinance provides that the lawful use of any land or premises existing at the time of its enactment may be continued as a nonconforming use, such ordinance continues the right to use land or premises in a residential use district in a business of the same kind as, although it does not represent any continuation or part of, the particular business that was being conducted on such land or premises at the time of enactment of such zoning ordinance."

While admittedly the way the statutes and ordinances are presently worded will lead to a potentially perpetual junkyard once it has been established, nonetheless, the legislature apparently has seen fit not to amend this statute. This court has no other choice with the present wording of the statute and intention of the legislature exhibited than to uphold this nonconforming use as consistent with the definitions provided by statute.

Plaintiff's injunction is hereby denied and the real estate located at 2976 State Route 132 is hereby found to have been and continues to be a nonconforming use permitted under the zoning resolution of Ohio Township as well as the statutes of Ohio, and in particular it is found that there has been no voluntary discontinuance of the subject property as a junkyard for a period of two years or more.

*Judgment accordingly.*