FAMILIES AGAINST REILY/MORGAN SITES ET AL., APPELLANTS, *v.* BUTLER COUNTY BOARD OF ZONING APPEALS ET AL., APPELLEES

(No. CA89-04-058—Decided July 10, 1989.)

*Taft, Stettinius & Hollister, R. Joseph Parker* and *John Harleston,* for appellants.

*John F. Holcomb,* prosecuting attorney, and *Patrick Connelly,* for appellee Butler County Board of Zoning Appeals.

*Porter, Wright, Morris & Arthur, J. Jeffrey McNealey* and *Janet J. Henry, Ruppert, Bronson & Chicarelli Co., L.P.A.,* and *James D. Ruppert,* for

intervenor-appellee Champion Internatl. Corp.

*Per Curiam.* On July 1, 1988, Champion International Corporation ("Champion") submitted to the Butler County Board of Zoning Appeals ("board") an application for a conditional use permit to construct a sanitary landfill. In connection with this conditional use application, Champion included its plans, specifications and other applications filed with the Ohio Environmental Protection Agency ("Ohio EPA") and the Butler County Board of Health ("board of health").

At a public hearing on September 14, 1988, the board considered Champion's application, together with evidence and testimony from Champion itself, as well as from an *ad hoc* coalition of citizens opposed to the proposed sanitary landfill, Families Against Reily/Morgan Sites ("FARMS").

On October 19, 1988, the board passed a formal resolution granting Champion a conditional use permit to construct and operate the proposed sanitary landfill facility subject to twenty-two separate conditions. Subsequently, on November 1, 1988, appellant FARMS filed a notice of appeal to the Butler County Court of Common Pleas.

After considering the record before the board, briefs, and arguments of counsel, the lower court on April 6, 1989 sustained the action taken by the board. FARMS now appeals this decision setting forth the following assignment of error:

"The lower court erred in affirming the Butler County Board of Zoning Appeals' decision to grant Champion's application for a zoning certificate."

Under the only assignment of error, FARMS has outlined six issues for our review, which it argues require the denial of Champion's conditional use permit. We disagree.

The issues advanced by FARMS are set out as follows:

"1. A zoning certificate for a lot not served by public sewer was illegally granted when the county health officer had not approved the method of sanitary waste disposal.

"2. A zoning certificate for a private industrial waste facility was illegally granted when the Zoning Resolution allows only county facilities in the district in question.

"3. A zoning certificate for an industrial waste facility was illegally granted under conditional use provisions for sanitary landfills when the proposed facility was not a sanitary landfill.

"4. It was unreasonable, arbitrary, and capricious to grant a conditional zoning certificate for an industrial waste facility when the Ohio Environmental Protection Agency had not completed its review of the project.

"5 A zoning certificate for an industrial waste facility was illegally granted when the facility would exceed the height restrictions of the Zoning Resolution.

"6. A zoning certificate for an industrial waste facility was illegally granted when the board of zoning appeals did not apply the correct standards to the application."

This appeal involves the appropriate scope of review by a court of common pleas from an appeal of an administrative agency pursuant to R.C. Chapter 2506. Specifically, in its sole assignment of error, FARMS contends the court of common pleas improperly affirmed the board's decision to grant the conditional use zoning certificate awarded to Champion.

In an administrative appeal taken under R.C. 2506.04, a court of common pleas, after reviewing the entire record, may find that the agency's decision is "unconstitutional, illegal,

arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record. * * *" However, a court may sustain the judgment of an administrative agency if the judgment is supported by some reliable and competent evidence. Specifically, "[i]f a preponderance of reliable, probative and substantial evidence exists, the Court of Common Pleas *must* affirm the agency decision; if it does not exist, the court may reverse, vacate, modify or remand." (Emphasis added.) *Dudukovich* v. *Lorain Metro. Hous. Auth.* (1979), 58 Ohio St. 2d 202, 207, 12 O.O. 3d 198, 202, 389 N.E. 2d 1113, 1117; *Cincinnati Bell, Inc.* v. *Glendale* (1975), 42 Ohio St. 2d 368, 71 O.O. 2d 331, 328 N.E. 2d 808.

Champion operates a papermaking mill in Hamilton, Ohio. The mill produces a solid, non-toxic, non-hazardous waste from its papermaking process. This waste is currently placed in a city-owned landfill which is near full capacity. As a result, Champion sought a permanent and safe place for its ongoing industrial waste in Reily Township, Butler County.

The sanitary landfill in question is situated on approximately forty acres at 7164 Hamilton-Scipio Road in Oxford, Ohio, centered within a two-hundred-ninety-acre plat. This landfill will only accept dewatered papermaking solid wastes and boiler ash. The landfill will compact wastes and use on-site low permeability soils to provide a two-inch "cover" over the waste at the end of each working day. Further, the landfill site will be secured by a ten-foot-high chain link fence, screened by landscaping, which will shield the operating area from view.

An exorbitant amount of confusion, in our view, has arisen in this matter due to the parties' commingling of state EPA requirements and local zoning ordinances. This case *does not* concern whether Champion has met all Ohio EPA regulations for permission to install a sanitary landfill. Instead, the proper issue before the court is whether Champion fulfilled those elements found in Butler County Zoning Resolution Sections ("zoning resolution") 7.039 and 21.41, pertaining to permitted conditional uses in an agricultural or A-1 zone.

The purpose behind A-1 zoning is described in Section 7.01 of the zoning resolution:

"The intent of the A-1 Agricultural District is to reserve land exclusively for agricultural cultivation, very low density residential development and other activities that are basically rural in character so that agricultural areas may be preserved and maintained and can be protected from haphazard encroachment by urban development."

Although a sanitary landfill is not a permitted use under Section 7.02, R.C. 303.14(C) states that a county board of zoning appeals is authorized to "[g]rant conditional zoning certificates for the use of land, buildings, or other structures if such certificates for specific uses are provided for in the zoning resolution[.]" Pursuant to this statute, the zoning resolution sets out various conditional uses for A-1 zoned property that require board approval.

A conditional use for sanitary landfills is set forth in Section 7.034 as follows: "[s]anitary landfills, disposal of garbage or refuse by the County, or agents thereof, subject to the provisions specified in subsection 21.41."

I

The first issue for our review concerns the argument that only county facilities may operate a sanitary landfill. FARMS advances the incredible position that only the county may operate a "sanitary landfill" when the resolution itself is dispositive against

such interpretation. See *Hydraulic Press Brick Co.* v. *Council of Independence* (1984), 16 Ohio App. 3d 204, 16 OBR 219, 475 N.E. 2d 144; *Donham* v. *E.L.B., Inc.* (1983), 8 Ohio Misc. 2d 31, 8 OBR 573, 457 N.E. 2d 953.

The drafters of Section 7.039 clearly separated the possible conditional uses in terms of private and public operation. The operation and construction of a "sanitary landfill" is a great deal different in terms of waste management from a facility consisting solely of "garbage" or "refuse." Normal county or municipal services include controlling and managing the daily garbage in its jurisdiction. However, sanitary, industrial waste resulting from manufacturing operations is a very different matter.

A governmental subdivision is not obligated to directly manage or control refuse from a private manufacturer. Although the county does have an interest in the waste disposal process, it functions as an overseer for ensuring that the appropriate regulations are followed. Further, setting apart "sanitary landfill" by a comma is not an "insignificant or minor" element as suggested by FARMS. The use of the comma in this instance was strategic, since it separated distinct methods of waste management and logically distinguished the traditional waste obligations of the private and public sector. *Crowl* v. *DeLuca* (1972), 29 Ohio St. 2d 53, 58 O.O. 2d 107, 278 N.E. 2d 352; *Weiss* v. *Porterfield* (1971), 27 Ohio St. 2d 117, 56 O.O. 2d 65, 271 N.E. 2d 792.

Therefore, the clear and plain meaning of Section 7.039 imposes a requirement of public ownership of garbage disposal or refuse only, and does not apply to a "sanitary landfill." Hence, a privately owned and operated sanitary landfill is a permitted conditional use in an A-1 or agricultural zone.

## II

FARMS insists that the proposed facility is not a "sanitary landfill," rendering the issued conditional use permit improper.

Section 7.039 of the zoning resolution permits a conditional use for "sanitary landfills." However, the term "sanitary landfill" is not defined or explained in the zoning code, leaving such interpretation to the board.

FARMS exclusively relies on the definition of a "sanitary landfill" promulgated by the Ohio EPA in Ohio Adm. Code 3745-27-01(T), which states:

"(T) 'Sanitary landfill' means a land disposal site employing a method of disposing of solid wastes on land in a manner intended to minimize environmental hazards by spreading the solid wastes in thin layers, compacting the solid wastes to the smallest practical volume, and applying and compacting cover material daily."

Pursuant to this definition, FARMS incorrectly argues that Champion's application did not meet the criterion of "daily cover" set forth by the Ohio EPA. FARMS' argument is not well-taken.

Ohio EPA regulations and local zoning acts are deemed harmonious for the purpose of protecting the health, safety, welfare and property of the citizens of the state of Ohio. *Hulligan* v. *Columbia Twp. Bd. of Zoning Appeals* (1978), 59 Ohio App. 2d 165, 13 O.O. 3d 162, 392 N.E. 2d 1292, paragraph two of the syllabus. Even so, the purpose of a zoning resolution or ordinance is quite separate and distinct from that of an Ohio EPA regulation, since the former controls land usage in a particular area while the latter concerns the procedures for

protecting the environment and its inhabitants.

The Ohio Legislature enacted R.C. Chapter 3475, which created the Ohio EPA. The legislature's intent in creating the Ohio EPA was to put into execution a long-term comprehensive program which would conserve, protect, and enhance the air, water, and other material resources of the state; prevent and abate pollution of the environment for the protection and preservation of the health, safety, welfare and property of the people of the state; administer the air, water, and other natural resources of the state for the use and benefit of the people of the state; and provide for enforcement of the right of the people to enjoy environmental quality consistent with human health and welfare. See R.C. 3745.011.

Clearly, the legislature intended for the state through the Ohio EPA to preempt and solely occupy the licensing and regulation of solid waste disposal and sanitary landfill facilities. However, local zoning does play a pivotal role in the installation and chartering of these facilities. Once the Ohio EPA has granted approval, its permit is subject to those local zoning provisions which do not conflict with the environmental laws and regulations approved by the state.

Section 3, Article XVIII of the Ohio Constitution provides:

"Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

This section preserves the supremacy of the state in matters of "police, sanitary and other similar regulations," while granting municipalities sovereignty in matters of local self-government, limited only by other constitutional provisions. Municipalities may enact police and other public welfare regulations under their powers of local self-government, but such regulations "must yield to general laws of statewide scope and application, and statutory enactments representing the general exercise of police power by the state prevail over police and similar regulations in the exercise by a municipality of the powers of local self-government." *State, ex rel. Klapp,* v. *Dayton Power & Light Co.* (1967), 10 Ohio St. 2d 14, 39 O.O. 2d 9, 225 N.E. 2d 230, paragraph one of the syllabus.

Therefore, a local ordinance which would place greater restrictive requirements than the Ohio EPA regarding a "sanitary landfill" is *ipso facto* invalid. See *Eastlake* v. *Bd. of Bldg. Stds.* (1981), 66 Ohio St. 2d 363, 20 O.O. 3d 327, 422 N.E. 2d 598.

The case *sub judice* does not present such a conflict between competing governmental regulators. Instead, FARMS contends that Champion has failed to comply with Ohio EPA regulations, thereby denying the proposed facility the status of a "sanitary landfill." However, these facts assumed by FARMS, which have allowed it to suggest that Champion does not qualify for a conditional use permit, have to the detriment of FARMS been unsubstantiated by the record.

First, Champion satisfied the criteria for a "sanitary landfill" in Ohio Adm. Code 3745-27-01(T). Although Champion requested a waiver of the "cover" requirement in its original application, by amendment, the "daily cover" element was retained by Champion.

Second, the conditional use permit issued by the board requires Champion to construct, operate and maintain the landfill in accordance with plans approved by the Ohio EPA and the board of health. Further, the court below as

well as the Ohio EPA found the proposed facility to be a "sanitary landfill."

In essence, FARMS would like this court to substitute its decision for that of the state EPA on the subject of what constitutes a "sanitary landfill," even though the Ohio EPA is charged with sole authority to govern said industrial waste. We agree with the board, the lower court, and the Ohio EPA, finding that the proposed solid waste disposal facility is a "sanitary landfill," rendering the conditional use provisions of the zoning resolution applicable.

### III

FARMS argues that a certificate of approval from the board of health and Ohio EPA is mandatory prior to issuance of a conditional use permit. We disagree.

### A

Section 20.2 of the zoning resolution states that a certificate of approval from the board of health is to accompany an application for a zoning certificate whenever a lot is not served by public water and/or public sewer systems. Champion submitted a request for approval to the board of health which indefinitely delayed its decision pending Ohio EPA issuance of a permit to install.

R.C. 6111.44 requires approval by the director of the Ohio EPA prior to the issuance of a certificate by a county or municipal health director upon the installation of a sewage and/or disposal system and treatment works. Thus, since the Ohio EPA has exclusive supervisory jurisdiction over sewage disposal at an industrial facility, the deference exhibited by the board of health towards the Ohio EPA was indeed warranted.

In the area of sewerage or treatment works for sewage disposal, the legislature has made the installation and construction of such a facility dependent on Ohio EPA approval. Therefore, R.C. 6111.44 preempts a local zoning requirement stipulating that a private water and/or sewer system must obtain board of health approval prior to filing a zoning application.

Further, the health officer of Butler County pursuant to R.C. Chapters 3734 and 3745 must defer approval of a private water and/or sewer system to the expertise of the Ohio EPA in connection with the licensing of a "solid waste" or "sanitary landfill."

Ohio Adm. Code 3745-37-04 states:

"(A)  The Board of Health or the Director shall either grant or deny a solid waste disposal license within 90 days of the date upon which a complete application is received, unless detail plans required by Regulation 3745-27-06 have not been approved and permits required by Chapter 3745-31 of the Regulations of the Ohio EPA have not been issued by the Director prior to expiration of this 90 day period, in which case a license shall be issued or denied not later than 30 days after the effective date of the Director's approval of such detail plans and issuance of such permits.

"(B)  All licenses applied for pursuant to Regulation 3745-37-02(D)(2)(b) shall contain an effective date of January 1. Licenses applied for pursuant to Regulation 3745-37-02(D)(1) or (D)(2)(a) shall be effective upon the date of issuance."

Hence, the requirement alleged by FARMS pursuant to section 20.2 of the zoning resolution, which requires prior board of health approval of a private water and/or sewerage system, is inconsistent with the regulatory framework of both Ohio EPA licensing procedures and local land use regulations.

The areas of water and sewage system control in connection with an industrial facility or complex are so pervasively regulated by the state government as to make any action by local authorities in that area a conflict with general law. See 1980 Ohio Atty. Gen. Ops. No. 66; R.C. Chapter 6111; Ohio Adm. Code Chapter 3745. A system of possible dual approval would allow a local board of health to require different information and conceivably reject plans accepted by the state EPA.

Therefore, due to the pervasive nature of state regulation in the areas of industrial water supply and sewage disposal, it is obvious that a local board of health is "preempted" from actions concerning such matters since the Ohio EPA has been given the legislative authority to act.

Pursuant to R.C. Chapter 6111, the Ohio EPA possesses complete power of approval concerning sewage systems, which had previously been vested in the Department of Health. Hence, since preemptive authority of the EPA has been established concerning water supply and sewage in industrial facilities, the health officer of Butler County properly deferred jurisdiction to the Ohio EPA in the instant matter. The argument advanced by FARMS necessitating prior local board of health approval before acceptance of a zoning application is simply improper according to the regulatory framework mandated by the state legislature.

B

FARMS also contends that the board abdicated its responsibility by deferring to the sole judgment of the Ohio EPA considerations concerning the impact of the solid waste facility on neighboring properties and the surrounding community. In fact, the board reviewed the plans, specifications and applications presented to the Ohio EPA by Champion and thereby determined that Ohio EPA regulations governing the construction and operation of the "sanitary landfill" were sufficient to protect the adjacent property owners, as well as the health and general welfare of the entire community. Therefore, we reject the argument advanced by FARMS on this issue.

Local zoning and state environmental regulations are complementary but wholly independent of one another. The Ohio EPA is solely concerned with environmental protection and the protection of human health from pollution and improper waste treatment and/or disposal. A local zoning board, on the other hand, is primarily interested in land usage implications affecting the development of the community. Therefore, the approval of a zoning certificate or permit is not made contingent on the approval of an EPA certificate to install a "sanitary landfill," especially when one considers that zoning regulations are a local matter or concern.

Section 21.41 of the zoning resolution permits conditional uses when authorized by the board, as follows:

"* * * In considering an application for a *conditional use,* a special exception or interpretation of the Zoning Map, *the Board shall give due regard to the nature and condition of all adjacent uses and structures;* and in authorizing a conditional use or special exception, *the Board may impose such requirements and conditions* with respect to location, construction, maintenance and operation — in addition to those expressly stipulated in this Resolution for the particular conditional use or special exception — *as the Board may deem necessary for the protection of adjacent properties and the public interest.*" (Emphasis added.)

Clearly, the zoning resolution itself does not contain a requirement that EPA approval for a "sanitary landfill"

must be obtained prior to issuance of a conditional use permit. The board in the instant case was cognizant of environmental and safety concerns pertaining to the surrounding community. To this end, the board approved the "conditional use permit" contingent on meeting stringent Ohio EPA standards for an "environmentally sound site." Therefore, FARMS' contention that granting a "conditional use permit" prior to Ohio EPA approval is unreasonable, arbitrary and capricious is totally without merit. Furthermore, adhering to the arguments advanced by FARMS would in effect create an additional "zoning administrative agency" for those cases containing EPA and environmental questions. Such a result is clearly contrary to the regulatory intent of the Ohio legislature and local zoning legislation.

The purposes of zoning and EPA regulations are inherently different, leading to the conclusion that both frameworks are distinct but harmonious. *Hulligan, supra; Columbia Twp. Trustees* v. *Williams* (App. 1976), 11 O.O. 3d 233. Therefore, it is permissible and proper for a local zoning board to defer judgment on environmental issues regarding "solid waste disposal" and "sanitary landfills" since these subjects are in the realm of expertise provided by the Ohio EPA. See *West Virginia* v. *Hazardous Waste Facility Approval Bd.* (1986), 28 Ohio St. 3d 83, 87-88, 28 OBR 179, 183, 502 N.E. 2d 625, 630-631.

### IV

FARMS also alleges that the conditional use zoning permit issued by the board was illegally granted since the proposed sanitary landfill facility exceeds the height restrictions of zoning resolution Section 7.1.

Section 7.1 provides:

"HEIGHT REGULATIONS. No structure shall exceed two and one-half (2½) stories or thirty (30) feet in height, except as provided in Section 19.2."

Therefore, the sole determination for this court is whether a landfill is a "structure." Section 4.41 of the zoning resolution defines structure as follows:

"STRUCTURE. Anything constructed, the use of which requires permanent location on the ground, or attachment to something having a permanent location on the ground."

In order for something to constitute a "structure," the item must be constructed and affixed to the ground or land. Therefore, the land or ground itself cannot be the equivalent of a "structure" as defined in the zoning resolution.

Further, Section 19.21 of the zoning resolution, regarding exceptions to the height restrictions, provides that height restrictions do not apply to "sand and gravel processing plants," among other various structures and buildings. The similarity between a "landfill" and a "sand and gravel plant" is striking, since both items are not constructed, but instead, consist of piling up either a natural substance or sanitary waste.

Notwithstanding the argument advanced by FARMS, this issue is not ripe for adjudication since the conditional use zoning certificate of Champion, resolution No. 88.52, merely states that the "[l]andfill [is] to be filled to the maximum of 35 [feet] from the present ground level." The alleged structure is not in violation at the present time, and as such, no case or controversy exists as to the validity of the conditional use zoning certificate on this particular issue.

Accordingly, we are in agreement with the court below, finding that a "landfill" is not a "structure" as defined in the zoning resolution.

### V

The "conditional use permit"

issued by the board's zoning resolution NO. 88.52 is further attacked by FARMS, which claims that the standards for permitting conditional uses in an A-1 or agriculturally zoned area were not satisfied by Champion.

Zoning resolution Section 21.41 states:

"* * * [T]he Board *shall give due regard* to the nature and condition of all adjacent uses and structures; and in authorizing a conditional use or special exception, the Board may impose such requirements and conditions with respect to location, construction, maintenance and operation — in addition to those expressly stipulated in this Resolution for the particular conditional use or special exception — as the Board *may deem necessary for the protection of adjacent properties and the public interest.*" (Emphasis added.)

Upon review of the challenged conditional use permit (zoning resolution No. 88.52), it is clear to us that the board properly followed the procedures set forth in Section 21.41. Zoning resolution No. 88.52 contains twenty-two additional conditions for the protection of adjacent properties as well as the public or community interest. These conditions or stipulations govern, *inter alia,* the materials to be landfilled, the type of security fencing, hours and days of operation, and truck washing and noise control.

FARMS also contends that the board breached its duty to properly inform itself of the nature and condition of adjacent properties that would be affected by the landfill. In effect, FARMS pleads that the board failed to give "due regard" under the zoning resolution. We are not persuaded by these allegations since the record does not establish the same.

The board received testimony from Champion and opponents of the landfill. Environmental viability studies were submitted by Champion, the Ohio EPA, and the board itself. The site was visited by board members, and the county prosecutor's office even presented a legal analysis justifying the landfill as a conditional use. Hence, the board did in fact meet its obligation to give "due regard" to adjacent properties by reviewing all available evidence.

The board specifically made the following findings:

"1. Butler County Zoning Board of Appeals finds [the proposed] use would not unduly adversely affect the property values nor cause undue hardship, provided that buffering and other performance standards are enforced.

"2. Character of the area would not be changed.

"3. Requested change would benefit the public in terms [of] tax base, employment and an environmentally safe disposal site."

Clearly, the board's issuance of a conditional use permit for a landfill in an A-1 zone was based on a preponderance of reliable, probative, and substantial evidence.

The provision for a conditional use in zoning legislation is a legislative recognition that "although certain uses are not necessarily inconsistent with the zoning objectives of a district, their nature is such that their compatibility in any particular area depends upon surrounding circumstances." *Gerzeny* v. *Richfield Twp.* (1980), 62 Ohio St. 2d 339, 341, 16 O.O. 3d 396, 398, 405 N.E. 2d 1034, 1036. Therefore a conditional use is permitted only upon administrative approval pursuant to legislatively prescribed standards.

R.C. 303.14(C) authorizes county boards of zoning appeals to "grant conditional zoning certificates for the use of land, buildings, or other structures if such certificates for specific uses are provided for in the zoning resolution[.]"

Even though the board and the court below held that Champion was granted a conditional use permit, FARMS maintains that in reality a "variance" was illegally obtained. This argument is unfounded as a matter of law since the conditional use section of the zoning resolution was strictly adhered to by the board in issuing the permit to Champion. Further, the confusion exhibited by FARMS in its use of these zoning law concepts is obvious, when the following definitions are correctly applied:

" 'A variance authorizes a land owner to establish or maintain a use which is prohibited by the zoning regulations. Thus, a variance results in a deviation from the literal import of the ordinance or resolution and may be granted only upon a showing of practical difficulties or unnecessary hardship.

" 'A special permit, which is evidenced by a conditional zoning certificate, authorizes a use which is permitted by zoning regulations, subject to the issuance of such a permit or conditional certificate. Thus, the special permit results in the establishment or maintenance of a use in the location and under the circumstances mandated by the zoning ordinance or resolution, and such permit may be granted upon whatever terms are imposed by the zoning ordinance or resolution.' *Boston* v. *Montville Twp. Zoning Bd. of Appeals* (1972), 32 Ohio Misc. 118, 120-121 * * *." *Nunamaker* v. *Jerusalem Twp. Bd. of Zoning Appeals* (1982), 2 Ohio St. 3d 115, 118, 2 OBR 664, 666-667, 443 N.E. 2d 172, 175.

The board did not use considerations of practical difficulties and unnecessary hardship, which are relevant to the granting of a "variance," in order to issue the "conditional use permit" to Champion. Rather, the board, pursuant to R.C. 303.14(C) and legislative standards concerning conditional uses found in Section 21.41 of the zoning resolution, properly held that the conditional use of a landfill in the proposed area would not adversely affect the adjacent properties or surrounding community. Further, in light of the passage of H.B. No. 592, which renders solid waste management a mandatory responsibility of all Ohio counties, the board's action was reasonable and based on the pressing needs of the local community and public interest. Thus, the laudatory step taken by the board to secure future waste disposal concerns in the community cannot be prohibited as a matter of law by the preferences or emotional appeal of a few well-intentioned residents.

VI

For the foregoing reasons, FARMS' assignment of error is not well taken since the decision of the board and the lower court is supported by a preponderance of reliable, probative and substantial evidence and is not arbitrary, capricious or unreasonable. Accordingly, by having decided the issues presented in these proceedings against appellant, we affirm the judgment of the Butler County Court of Common Pleas.

*Judgment affirmed.*

JONES, P.J., HENDRICKSON and KOEHLER, JJ., concur.