Louis **ERNST,** Ila Ernst and Vulcan Material Company, Appellees,

v.

**JOHNSON COUNTY, Iowa, Appellant.**

No. 93–723.

Supreme Court of Iowa.

Oct. 19, 1994.

Ann Lahey, Asst. County Atty., for appellant Johnson County.

David E. Brown of Hayek, Hayek & Brown, Iowa City, for intervenor-appellant J. George Swisher.

William L. Meardon of Meardon, Sueppel, Downer & Hayes, Iowa City, for appellees.

Considered by McGIVERIN, C.J., and LARSON, CARTER, SNELL, and ANDREASEN, JJ.

SNELL, Justice.

In this case, Johnson County together with J. George Swisher and Patrick O'Neil who intervened appeal a decision of the Johnson County District Court which held that Louis and Ila Ernst and Vulcan Material Company have established and continued a nonconforming use of a quarry near Iowa City.  In

this declaratory judgment action brought by the Ernsts and Vulcan, the district court held that as such they were not required to conform to conditional use permit provisions enacted by Johnson County in 1980. We affirm.

## I. Factual Background

The quarry, known as the Ernst quarry, is located in Johnson County, northeast of Iowa City. Minnie F. Donovan originally owned the site and leased it to B.L. Anderson, Inc. The Ernsts purchased the quarry in 1969 and continued to lease it to B.L. Anderson. In 1988 Vulcan took over the lease. These leases provided that the lessees were to pay the owner a nominal consideration for the lease right and royalties on any materials sold.

At the time the Ernsts purchased the quarry in 1969, county ordinances zoned the site "A–1 agricultural." Prior to 1980, the zoning ordinances allowed for mining and mineral extraction in A–1 districts. In 1980, Johnson County amended its zoning ordinances to include section 8:1.34, "Conditional Use Permits." This section allows parties to mine and extract minerals in A–1 districts, but only if they acquire a conditional use permit or if they established the mining use of the land as an "existing use" prior to the enactment of the permit requirement. Section 8:1.34 further provides that if a party with an established existing use "voluntarily interrupts" the use for one year, the conditional use provisions must be satisfied.

Since at least 1953, the responsible parties have maintained all required quarrying permits and licenses. However, neither B.L. Anderson nor Vulcan have paid the Ernsts any royalties nor made any commercial sales since the Ernsts purchased the quarry. There has been no blasting or crushing of rock at the site since the mid–1960s when Interstate 80 was built. The quarry contains stockpiles left from previous mining activity and Ernst has removed a few truckloads of material from these stockpiles annually. Ernst has taken these materials for his private use and in 1974 donated rock to the Morse Community Center and to the county for road improvement projects. Ernst also sold quarry materials to Wilson's Apple Orchard in 1991.

In 1977, the Ernsts' son, Ronald, requested that Johnson County rezone approximately one acre of land west and adjacent to the quarry site from A–1 agricultural to suburban residential (RS). After the county rezoned the parcel, Ronald Ernst built a single-family residence for himself on the plot which is within 1000 feet of the quarry.

In 1987, Ronald Ernst sold his residence and one-acre plot to Tim Armbruster. In 1990 Armbruster sold the property to O'Neil who continues to reside at the location. In 1975, Swisher purchased thirty-three acres of real estate immediately south of the quarry and across the road from the Ernst property. He completed the construction of his residence on that site in early 1990.

In the spring of 1990, Vulcan notified the county that it intended to prepare the quarry for mineral extraction. Vulcan asserted that the quarry was an existing use at the time of enactment of the 1980 amendments and therefore the ordinances did not require it to conform to the conditional use requirements. In support of its stance, Vulcan presented documents to the county which indicated that all concerned parties had maintained required permits and licenses without interruption since the early 1960s. The county agreed that the conditional use provisions did not apply to the quarry and on June 4, 1990 the assistant county zoning administrator sent Vulcan a letter which stated that "everything seemed to be in order and your operation may continue." Following receipt of this letter, Vulcan began blasting to drain the quarry.

Despite the June 4 letter of approval, the county subsequently notified Vulcan that it intended to hold a "fact-finding" hearing on November 20, 1990 in order to determine whether the quarry was an existing use at the time of the conditional use amendments. Following the hearing, the county rendered a determination that the quarry had not maintained its status as an existing use due to a lack of commercial activity and notified Vulcan that it should cease operations and apply for a conditional use permit.

On March 5, 1991, Vulcan and Ernst commenced an action in Johnson County District Court seeking a declaratory judgment that the quarry has maintained its status as an existing use and therefore is not subject to the conditional use permit provisions.

The trial court in an excellent analysis of the quarrying business and the law applicable to its unique status agreed and held that the quarry constitutes an existing use which has been maintained without voluntary interruption since before the 1980 amendments. It therefore held that the plaintiffs could operate the quarry without applying for a conditional use permit.

## II.  Standard of Review

■ Whether the district court tried a declaratory judgment proceeding in equity or at law is determinative of our scope of review on appeal. *Matter of Mount Pleasant Bank & Trust Co.*, 426 N.W.2d 126, 129 (Iowa 1988). If the case was tried in equity, our review is de novo. *Bjork v. Dairyland Ins. Co.*, 174 N.W.2d 379, 382 (Iowa 1970). If the district court tried the case at law, our review is for correction of errors of law. *Matter of Mount Pleasant*, 426 N.W.2d at 129.

■ The pleadings, relief sought, and nature of the case ordinarily determine whether a declaratory judgment action is legal or equitable. *Citizens Sav. Bank v. Sac City State Bank*, 315 N.W.2d 20, 24 (Iowa 1982). However, we will review a case on appeal in the same manner in which the trial court considered it regardless of what these factors suggest. *Id.* Where there is uncertainty about the nature of a case, a litmus test we use in making this determination is whether the trial court ruled on evidentiary objections. *Id.* In addition, where the trial court labels its ruling a "decree," this is an indication it tried the matter in equity. *Id.*

■ In this case, the district court received evidence subject to objections and labeled its ruling a "decree." The relevant factors considered together indicate the court tried this matter in equity. Therefore, our scope of review is de novo.

## III.  Existing Use

Johnson County Zoning Ordinance section 8:1.34(G) provides:

Existing Uses: Existing uses designated in this article that have been established prior to the adoption of the Conditional Use Permit Requirements for said use shall be deemed an approved conditional use without permit. However, if said use is *voluntarily interrupted* for a period of one (1) year after the effective date of adoption of such requirements, then the re-establishment of said use shall conform to the provisions of this article.

(Emphasis added.) Pursuant to the conditional use requirements in the zoning ordinance, mining and mineral extraction would be restricted from being no closer than 1000 feet from any property zoned A–2, RS, RIA, RIB, R2, or R3A. Any modification from this condition would require a four-fifths vote of the board of supervisors. Two issues are of concern in applying this section: (1) did the Ernsts and lessees establish use of the site as a quarry prior to 1980; and (2) if they did establish such use, did they voluntarily interrupt the use for a span of one year following the enactment of the permit requirements?

### A.  Establishment of Use Prior to 1980

■ Although we give some deference to an administrative agency's interpretation of a statute it administers, final construction and interpretation of statutory law is a question of law for this court to decide. *Good v. Iowa Civil Rights Comm'n*, 368 N.W.2d 151, 155 (Iowa 1985). We construe zoning restrictions strictly in order to favor the free use of property and we will not extend such restrictions by implication or interpretation. *Greenawalt v. Zoning Bd. of Adjustment of Davenport*, 345 N.W.2d 537, 545 (Iowa 1984). We also will not construe zoning restrictions in such a way that they will be arbitrary or unreasonable and we will avoid an interpretation which would make them confiscatory. *Jersild v. Sarcone*, 260 Iowa 288, 293, 149 N.W.2d 179, 183 (1967).

■ A party asserting a nonconforming use carries the burden to establish the lawful and continued existence of the use by a preponderance of the evidence. *City of*

*Jewell Junction v. Cunningham,* 439 N.W.2d 183, 186 (Iowa 1989). In order to determine whether a party established a nonconforming use we will look to "the realities of the business in question and the nature of its operations." *County of Du Page v. Elmhurst–Chicago Stone Co.,* 18 Ill.2d 479, 165 N.E.2d 310, 313 (1960). An industrial use of land is that use in which members of the trade customarily or commonly engage. *Durning v. Summerfield,* 314 Ky. 318, 235 S.W.2d 761, 763 (Ct.App.1951).

The county and intervenors assert that Ernst and Vulcan failed to establish the quarry as an existing use because they did not perform any commercial activity at the quarry site when the county adopted the conditional use permit amendments. The county and intervenors argue that since the parties were not blasting, crushing, or selling quarry materials at the time of the adoption of the amendments, Ernst and Vulcan did not establish the use they assert.

The plaintiffs argue that they had established the quarry as an existing use at the time of adoption of the conditional use amendments because all required licenses, leases, and permits were maintained at the time and have been maintained continuously since at least the early 1960s. The plaintiffs assert that due to the nature of the quarrying business, such maintenance of licenses, leases, and permits establishes an active quarrying operation.

■■■ At trial, the plaintiffs presented a number of experts who testified that a quarry site which continuously maintains all required permits, licenses, and leases is considered active by industry standards. Two of the experts the plaintiffs presented testified that quarries such as the Ernst quarry, denoted "country quarries," typically undergo extended periods without blasting, crushing, mineral extraction, or sales. This occurs because such quarrying operations depend on demand for the materials in question and demand is a function of whether or not operations requiring such materials are taking place near the quarry. Therefore, it is typical in the life of a country quarry to undergo periods in which the quarry operator or operators will maintain all required permits and

licenses but will engage in very little commercial activity due to low demand. Such a period does not indicate the quarry is not in "use," but merely demonstrates the quarry operators are waiting for market conditions which demand increased activity.

■■■ Some jurisdictions hold that a party establishes an existing nonconforming use if they use the premises "so that they may be known in the neighborhood as being employed for a given purpose." *See, e.g., Kubby v. Hammond,* 68 Ariz. 17, 23, 198 P.2d 134, 139 (1948). This test requires the party to: (1) adapt the land for the purpose; and (2) use the land within that purpose. *Id.*

■■■ By any standard, the quarrying use of the site was clearly established in the mid–1960s when considerable blasting, crushing, and commercial sale of materials took place in conjunction with the construction of Interstate 80. Thereafter, demand for materials from the quarry fell off and the plaintiffs were not engaging in any blasting, crushing, or extraction of rock when the special permit amendments were enacted. A decrease in business does not amount to a per se abandonment of a nonconforming use. *See Donham v. E.L.B., Inc.,* 8 Ohio Misc.2d 31, 457 N.E.2d 953 (Ohio C.P.1983). Discontinuance of one or more, but not all operations of the quarry did not amount to a voluntary discontinuance of the use. *Cf. id.* Due to the nature of the quarrying business, we hold that the plaintiffs did establish the quarrying operation as an existing use at the time of the amendments since the relevant parties established the quarrying use in the mid–1960s and continued its use by: (1) maintaining all requisite licenses, permits, and leases; and (2) engaging in minimal activity at the site through 1980.

## B. Voluntary Interruption of Use

■■■ Given that the plaintiffs established the quarry as an existing use prior to the enactment of the amendments and continued that use through 1980, we must next determine whether the plaintiffs ever voluntarily interrupted that use. The county asserts that in determining whether the plaintiffs interrupted the use of the site, we should not

look to the plaintiffs' intent. While we agree that we should not look to the intent of the parties in determining whether they originally established the nonconforming use, the plain language of the ordinance at issue demonstrates that we must look to their intent when determining whether they interrupted the nonconforming use.

■ As noted above, section 8:1.34(G) requires parties to acquire conditional use permits if the use is *"voluntarily interrupted* for a period of one (1) year" after it is properly established. (Emphasis added.) Black's Law Dictionary 1412 (6th ed. 1990) defines "voluntarily" as "[d]one by design or *intention, intentional,* proposed, *'intended,* or not accidental. *Intentionally* and without coercion." (Emphasis added.) Therefore, in order for the ordinance to require the plaintiffs to acquire a conditional use permit, the plaintiffs must not only have interrupted the use but the express language of the ordinance requires the existence of evidence that they *intentionally* interrupted the use. *See Hartley v. City of Colorado Springs,* 764 P.2d 1216, 1225 (Colo.1988).

■ The plaintiffs have maintained all requisite leases, permits, and licenses without interruption since before the conditional use permit amendments were enacted. They have also engaged in minimal activity at the site and have not demonstrated any intention of interrupting the quarry use of the site. *See South County Sand & Gravel Co. v. Town of Charlestown,* 446 A.2d 1045, 1047 (R.I.1982). Due to the nature of the quarrying business, maintenance of the required permits and licenses in combination with minimal activity demonstrates an uninterrupted operation following an initial establishment of the nonconforming use.

■ Periods of discontinuance which are caused by circumstances beyond the control of a property owner will not cause the loss of a nonconforming use. *Smith v. Board of Adjustment of the City of Cedar Rapids,* 460 N.W.2d 854, 857 (Iowa 1990); *City of Minot v. Fisher,* 212 N.W.2d 837, 842 (N.D.1973). Therefore, even if section 8:1.34(G) did not expressly contain an intent element and the plaintiffs have interrupted the operations of the quarry, an interruption caused by decreased demand would not cause the plaintiffs to lose their nonconforming use. A decrease in demand is clearly beyond a quarry operator's control.

The record does not demonstrate that the plaintiffs voluntarily interrupted the nonconforming use of the quarry since they have continuously maintained all required permits and licenses since the original establishment of the quarry. The decision of the district court is affirmed.

**AFFIRMED.**