CROWL, APPELLEE, *v.* DELUCA, APPELLANT.

(No. 71-159—Decided February 2, 1972.)

Mrs. Dorothy Patterson Sayre, Messrs. Mills, Mills, Fiely & Lucas and Mr. Virgil F. Mills, for appellee.

Messrs. Day, Kettlerer, Raley, Wright & Rybolt and Mr. William S. Heichel, for appellant.

LEACH, J. Does R. C. 4511.21[5] provide any prima-facie lawful speed limit for state routes within business districts in municipal corporations? If it does, what is such prima-

[5]R. C. 4511.21, so far as pertinent to the issues presented herein, reads:

"No person shall operate a motor vehicle * * * in and upon the streets and highways at a speed greater or less than is reasonable or proper * * *.

"It is prima-facie lawful for the operator of a motor vehicle * * * to operate the same at a speed not exceeding the following:

"(A) Twenty miles per hour when passing a school building or the grounds thereof during school recess and while children are going to or leaving school during the opening or closing hours * * *.

"(B) Twenty-five miles per hour in all other portions of a municipal corporation, except on state routes, through highways outside business districts, and alleys;

"(C) Thirty-five miles per hour on all state routes or through highways within municipal corporations outside business districts, except as provided in divisions (D) and (F) of this section;

facie limit? These are the basic questions presented for decision herein.

The problem before us arises principally because of a change made in the language of paragraph (B) of R. C. 4511.21 in 1957. Prior to that time, paragraph (B) read:

"(B) Twenty-five miles per hour in all other portions of a municipal corporation, except on state routes and through highways outside business districts;"

As then phrased, the words "outside business districts" modified both "state routes" and "through highways." Thus, state routes within business districts did not fall within the exception of paragraph (B), and the prima-facie speed limit within such districts was 25 miles per hour.

This language of paragraph (B) was in consonance with that of paragraph (C) which, so far as pertinent, read and still reads:

"(C) Thirty-five miles per hour on all state routes or through highways within muncipal corporations outside business districts * * *."

Here, too, the words "outside business districts" modified both "state routes" and "through highways."

By paragraphs (B) and (C), the prima-facie speed limit within a business district was 25 miles per hour for all through highways within a municipal corporation, whether or not designated as a "state route," and the prima-facie speed limit for all such highways outside a business district was 35 miles per hour, except on "con-

---

"(D) Fifty miles per hour on controlled-access highways and expressways within municipal corporations;
"* * *
"(F) Fifty miles per hour on state routes within municipal corporations outside urban districts unless a lower prima-facie speed is established as further provided in this section;
"(G) Fifteen miles per hour on all alleys within the municipal corporation;
"* * *
"It is prima-facie unlawful for any person to exceed any of the speed limitations * * *."

trolled access highways'' (paragraph (D)) or ''outside urban districts'' (paragraph (F)).⁶

The language of paragraphs (B) and (C) was also in accord with that of R. C. 4511.65 which provided, and still provides, that: ''All state routes * * * are hereby designated as through highways * * *.''⁷

An examination of the legislative history of R. C. 4511.-21 (G. C. 6307-21), from the time of its original enactment in 1941 as a part of the Uniform Traffic Act until 1957, reveals that, except for a slight change in the phraseology of what is now paragraph (B) made in the 1953 Code Revision, its language, so far as pertinent to the issue presented herein, remained unchanged.

We turn now to a consideration of the 1957 amendment. No change was made in the language of paragraph (C). Paragraph (B), however, was amended to read: ''Twenty-five miles per hour in all other portions of a municipal corporation, except on state routes, through highways outside business districts, and alleys.''

By a literal application of the rules of English grammar, the words ''outside business districts'' no longer modify ''state routes,'' but only modify ''through highways.'' By such a literal application, one is led to the incongruous conclusion that, since 1957, the General Assembly has provided *no* prima-facie speed limit on ''state routes'' *within* business districts, although it continues to provide a prima-facie limit of 35 miles per hour on ''state routes'' *outside* business districts; that when a motorist driving on a ''state route'' within a municipal corporation outside a business district enters the more congested busi-

---

⁶In view of the conclusions reached herein, we need not decide who would have the burden of proof as to the applicability of paragraph (D) as an exception where paragraph (C) otherwise would apply.

⁷''Through highway'' and ''state route'' are defined by paragraphs (GG) and (II) respectively of R. C. 4511.01 as follows:

''(GG) 'Through highway' means every street or highway as provided in Section 4511.65 of the Revised Code.''

''(II) 'State route' means every highway which is designated with an official state route number and so marked.''

ness district, he leaves a prima-facie 35-mile-per-hour speed limit area and enters an area with *no* prima-facie speed limit.

By the application of *other* basic rules of statutory interpretation, we conclude that, by the 1957 amendment of R. C. 4511.21, the General Assembly had no such intention, and that the statute need not be, and should not be, so interpreted.

In *Prosen* v. *Duffy* (1949), 152 Ohio St. 139, this court held, in the first paragraph of the syllabus:

"A statute should be given that construction, unless such is prohibited by the letter of the statute, which will accord with common sense and reason and not result in absurdity or great inconvenience. (Paragraph one of the syllabus in *Moore* v. *Given*, 39 Ohio St., 661, approved and followed.)"

The second paragraph of the syllabus in *State, ex rel. Haines,* v. *Rhodes* (1958), 168 Ohio St. 165, reads:

"The General Assembly is presumed not to intend any ridiculous or absurd results from the operation of a statute which it enacts, and, if reasonably possible to do so, statutes must be construed so as to prevent such results."

By the enactment of R. C. 1.49, effective January 3, 1972, the General Assembly itself has acknowledged certain basic rules of statutory construction, the statute providing:

"If a statute is ambiguous, the court, in determining the intention of the legislature, may consider among other matters:

"(A) The object sought to be attained;

"(B) The circumstances under which the statute was enacted;

"(C) The legislative history;

"(D) The common law or former statutory provisions, including laws upon the same or similar subjects;

"(E) The consequences of a particular construction;

"(F) The administrative construction of the statute."

We recognize that a statute, "free from ambiguity and

doubt,'' is not subject to judicial modification in the guise of interpretation. *Slingluff* v. *Weaver* (1902), 66 Ohio St. 621.[8] We conclude, however, that R. C. 4511.21(B), as amended in 1957, is ambiguous, and its meaning doubtful. By its terms the prima-facie speed limit on ''through highways'' inside business districts is 25 miles per hour, and by the terms of R. C. 4511.65 all ''state routes'' are ''through highways.'' And yet these same ''state routes'' no longer are specifically modified by the words ''outside business districts'' in paragraph (B).[9] There would appear to be no possible rational basis for changing the reference to ''state routes'' in paragraph (B) to include all ''state routes,'' whether within or outside a business district, and at the same time to continue to limit the reference to ''state routes'' in paragraph (C) to those ''outside business districts.''

---

[8]Paragraphs one and two of the syllabus of *Slingluff* read:

"1. The object of judicial investigation in the construction of a statute is to ascertain and give effect to the intent of the law-making body which enacted it. And where its provisions are ambiguous, and its meaning doubtful, the history of legislation on the subject, and the consequences of a literal interpretation of the language may be considered; punctuation may be changed or disregarded; words transposed, or those necessary to a clear understanding and, as shown by the context manifestly intended, inserted.

"2. But the intent of the law-makers is to be sought first of all in the language employed, and if the words be free from ambiguity and doubt, and express plainly, clearly and distinctly, the sense of the law-making body, there is no occasion to resort to other means of interpretation. The question is not what did the General Assembly intend to enact, but what is the meaning of that which it did enact. That body should be held to mean what it has plainly expressed, and hence no room is left for construction."

[9]Reading R. C. 4511.21(B) *in pari materia* with R. C. 4511.65, it might be said, perhaps facetiously, that the prima-facie speed limit on a "state route," in its capacity as a "through highway," would remain at 25 miles per hour, but that there is no prima-facie speed limit for a "state route" when considered in some other capacity. Since all "state routes" are designated by law as "through highways," however, the additional reference in both paragraphs (B) and (C) to "state routes" would seem to be redundant, they having already been included as "through highways."

A careful examination of the 1957 amendment and a recognition of the purpose sought to be served thereby make plain the fact that no change was intended or effectuated thereby as to the prima-facie speed limit on any portion of a municipal corporation except "alleys."

Until 1957, there was no definition of an "alley" in the Uniform Traffic Act. The only reference to "alley" was contained in G. C. 6307-43 (now R. C. 4511.44), providing that the operator of a vehicle entering "a highway from a private road, driveway, alley or building" should stop and yield the right of way. Since the definition of "street" in R. C. 4511.01(AA) as "every way open to the use of the public * * * for purposes of vehicular travel" was sufficiently broad as to include an "alley," the term being undefined, the trial courts almost uniformly restricted the meaning of G. C. 6307-43 and R. C. 4511.44 to a "private * * * alley." This meant that as to vehicular accidents at unmarked intersections the car on the right had the "right of way" even though it was proceeding on what the public thought of as an "alley."[10]

With this background, the General Assembly, for the first time, defined an "alley" by the amendment of R. C. 4511.01, effective August 27, 1957, to include paragraph (VV).[11] 127 Ohio Laws 54, 59.

Later in the same session, and recognizing that no prima-facie speed limits had been provided for the newly

---

[10]The many cases so holding appear not to have been reported. For an analogous holding see Brown v. Franz (1948), 84 Ohio App. 160, involving an accident in the city of Columbus at Rich Street (a through street but without a stop sign at the particular intersection) and Pearl Street (often referred to as Pearl Alley).

[11]Now R. C. 4511.01(WW). This paragraph provides:

" 'Alley' means a public street in a municipal corporation which:

"(1) Is used primarily for the convenience of the owner of property abutting thereon and of the persons dealing with him;

"(2) Is abutted on both sides by property which is not customarily designated by an official property number; or

"(3) Has been declared an 'alley' by the legislative authority of the municipal corporation in which such street is located."

defined "alleys," R. C. 4511.21 was amended, effective September 14, 1957. 127 Ohio Laws 931. The Act which accomplished this amendment, Amended House Bill No. 839, was entitled: "To amend Section 4511.21 of the Revised Code relative to speed regulations in alleys."[12]

To accomplish this purpose, the General Assembly added a new paragraph (G), providing a new prima-facie speed limit of 15 miles per hour "on all alleys within the municipal corporation," and also added the words "and alleys" to the exception from the 25 mile prima-facie speed provided in paragraph (B). In doing so, and apparently in an effort to make sure that the words "and alleys" were read as being included within the "except" clause of paragraph (B), the drafters thereof removed the first "and" after the word "except" and replaced it with a comma. While this repunctuation would make clear that alleys were to be included as a third exception, it inadvertently changed the grammatical construction of the sentence, resulting in the ambiguity heretofore described.[13]

By applying the principles of statutory construction long followed by courts in the interpretation of an ambiguous statute, which principles are now concisely stated in

---

[12]Section 16, Article II of the Ohio Constitution directs that "no bill shall contain more than one subject, which shall be clearly expressed in its title"

[13]In our recent decision in *Weiss* v. *Porterfield* (1971), 27 Ohio St. 2d 117, at page 120, we stated:

"The placement of a comma is not necessarily indicative of legislative intent. As stated in 50 American Jurisprudence 249, Section 253:

" 'In the interpretation of statutes, the punctuation thereof is not seriously regarded. It is a minor, and not a decisive or controlling, element in the interpretation of a statute. Indeed, punctuation is generally regarded as a fallible standard of the meaning of a statute, and the last resort as an aid in its interpretation. Where the true meaning of the legislature is manifest, the courts will not permit punctuation to control, but will disregard the punctuation of a statutue or repunctuate, if need be, to give effect to what otherwise appears to be its true meaning.'

"The above principle of construction was applied as to the placement of a comma in *Albright* v. *Payne* (1885), 43 Ohio St. 8 * * *."

R C. 1.49, and by thus viewing the "object sought to be attained," the "circumstances under which the statute was enacted," the "legislative history" and the "consequences of a particular construction," we conclude that R. C. 4511.-21(B), even after its 1957 amendment, still provides a prima-facie speed limit of twenty-five miles per hour on state routes in municipal corporations within business districts.

Finding that the reversal of the judgment of the Common Pleas Court was based, in essential part, on a misinterpretation of R. C. 4511.21, and finding further that the judgment of the Common Pleas Court, based on the jury verdict, was not otherwise erroneous, we reverse the judgment of the Court of Appeals and reinstate the judgment of the Common Pleas Court.

*Judgment reversed.*

O'Neill, C. J., Schneider, Silbert, Corrigan and Stern, JJ., concur.

Herbert, J., concurs only in the judgment of reversal.

Silbert, J., of the Eighth Appellate District, sitting for Duncan, J. Judge Silbert of the Court of Appeals was, pursuant to Section 2 of Article IV of the Constitution of Ohio, duly directed by the Chief Justice "to sit with the justices of the Supreme Court in the place and stead of" Justice Duncan and Judge Silbert did so and heard and considered this cause prior to the resignation of Justice Duncan on November 28, 1971.