The STATE of Ohio, Appellee,

v.

POWERS, Appellant.█

[Cite as *State v. Powers* (1991), 73 Ohio App.3d 277.]

Court of Appeals of Ohio,
Hamilton County.

No. C–900445.

Decided April 24, 1991.

*Arthur M. Ney, Jr.,* Prosecuting Attorney, and *Ron W. Springman,* for appellee.

*Sirkin, Pinales, Mezibov & Schwartz, Marc D. Mezibov* and *Edmund J. McKenna,* for appellant.

*Per Curiam.*

This cause came on to be heard upon appeal from the Hamilton County Municipal Court.

We sustain the appellant's sole assignment of error because the appellant presented uncontroverted proof that he shot the dog "while driving it away from his premises" and that he thereafter timely deposited sufficient funds to cover any damages incurred and thereby sustained his burden of demonstrating by a preponderance of the evidence the affirmative defense to a charged violation of R.C. 959.02. See R.C. 959.04. We, therefore, reverse the judgment of conviction entered below and order that the appellant be discharged.

*Judgment reversed*
*and defendant discharged.*

DOAN and UTZ, JJ., concur.

GORMAN, P.J., dissents.

GORMAN, Presiding Judge, dissenting.

Upon the undisputed evidence that Powers intentionally shot a dog wandering on his unfenced lawn, the trial court correctly convicted him of willfully injuring an animal, a minor misdemeanor, in violation of R.C. 959.02. There is no palpable reason to support Powers's argument that he is liable to respond only for civil damages because R.C. 959.04 exempts landowners from criminal liability for "killing or injuring an animal or attempting to do so while endeavoring to prevent it from trespassing upon his enclosure, or while it is so trespassing, or while driving it away from his premises * * *."

Powers maintains that, although his yard was unfenced, the statutory exemption from criminal prosecution applies to him because the derivation of the word "enclosure" is from the word "close," which at common law was simply the boundary of real property, whether or not enclosed. Black's Law Dictionary (5 Ed.Rev.1979) 231. In light of R.C. 1.49, which requires consideration of the common law and legislative history to determine legislative intent, the argument is surrealistic.

Under the common-law form of action, trespass *quare clausum fregit*, an owner of domestic animals was deemed a trespasser if he allowed his animals to run at large on unenclosed land. Because so little land in this state originally was under cultivation, Ohio did not adopt trespass *quare clausum fregit* as part of its common law, at least as it pertained to domestic animals. In balancing the interests extant, the Ohio common law recognized the landowner's lesser burden of enclosing his property for agricultural purposes and thereby fencing out domestic animals. *Marsh v. Koons* (1908), 78 Ohio

St. 68, 84 N.E. 599; *Marietta & Cincinnati RR. Co. v. Stephenson* (1873), 24 Ohio St. 48, paragraph three of the syllabus; see, also, 3 Ohio Jurisprudence 3d (1978) 604, Animals, Section 36. With the extension of agriculture, however, the legislature by statute modified the Ohio common law and shifted responsibility to those who permitted their domestic animals to run at large. This historical transition from the common law to the statutes explains why R.C. 959.04, now in question, retains the element of trespassing upon the *"enclosure,"* while R.C. 951.02 prohibits an owner from allowing his livestock to run at large on "unenclosed land."

R.C. 1.42 dictates that the words "enclosure" and "unenclosed" are to be read and construed according to their common usage. Webster's Third New International Dictionary (1981) defines "enclosure" as "the separation of land from common ground by a fence or barrier." Accordingly, there is no need to construe the word "enclosure" as it is employed in the statute because its meaning and the legislative intent are clear. See *Holiday Inns, Inc. v. Limbach* (1990), 48 Ohio St.3d 34, 548 N.E.2d 929.

Powers also argues that he is exempt from criminal prosecution under R.C. 959.02 because, as provided in R.C. 959.04, he was simply "driving the dog away from his premises." He maintains that this phrase is independent and stands on its own without reference to the immediately preceding two phrases in the series, "while endeavoring to prevent it from trespassing upon his enclosure, or while it is so trespassing * * *." The legislative history of R.C. 959.04 again refutes Powers's claim.

The predecessor statute to R.C. 959.04 was G.C. 6853, which was first enacted in 1890. It stated:

"The last two sections [G.C. 6851 (R.C. 959.02) and G.C. 6852 (R.C. 959.03)] do not extend to a person who kills or injures, or attempts to kill or injure, any animal mentioned therein while endeavoring to prevent it from trespassing upon his enclosure, or while it is trespassing *therein,* or *thereafter* driving it away from his premises." (Emphasis added.)

If we assume, as Powers argues, that the legislature's subsequent omission of the word "thereafter" from R.C. 959.04 creates an ambiguity as to whether "enclosed" still modifies "premises," our role in construing the statute is to give effect to the intent of the legislature, *Henry v. Central Natl. Bank* (1968), 16 Ohio St.2d 16, 45 O.O.2d 262, 242 N.E.2d 342, guided by the legislative history, the common law, and the consequences of a particular construction. R.C. 1.49.

One rule of construction that courts in the past have employed provides that, if an amendment to a statute changes the wording, there is a presumption that the legislature intended to change the meaning and application of the

statute. *Dennison v. Dennison* (1956), 165 Ohio St. 146, 59 O.O. 210, 134 N.E.2d 574; *State ex rel. Clampitt v. Brown* (1956), 165 Ohio St. 139, 59 O.O. 161, 133 N.E.2d 369. Because it was not codified after the legislature enacted the rules of construction in R.C. 1.01 through 1.60, the survival of this presumption for the purposes of statutory construction is questionable. Furthermore, the Ohio Supreme Court has not referred to the presumption since its 1956 decision in *Dennison, supra.* In fact, when it did have the opportunity to do so in determining the effect of a difference of one word between the Ohio contribution statute, R.C. 2307.32(F)(1), and the Uniform Contribution Among Joint Tortfeasors Act, which was in all other respects identical, the court not only failed to refer to the presumption, but concluded that the "difference of a single word [was] not significant." *Beck v. Cianchetti* (1982), 1 Ohio St.3d 231, 1 OBR 253, 439 N.E.2d 417, fn. 3. Accordingly, the principal focus is more appropriately expressed in *Slingluff v. Weaver* (1902), 66 Ohio St. 621, 64 N.E. 574, paragraph one of the syllabus:

"The object of judicial investigation in the construction of a statute is to ascertain and give effect to the intent of the law-making body which enacted it. And where its provisions are ambiguous, and its meaning doubtful, the history of legislation on the subject, and the consequences of a literal interpretation of the language may be considered; punctuation may be changed or disregarded; words transposed, or those necessary to a clear understanding, and, as shown by the context manifestly intended, inserted." See *Crowl v. DeLuca* (1972), 29 Ohio St.2d 53, 58 O.O.2d 107, 278 N.E.2d 352, fn. 8.

In arguing that the statutory phrase "while driving it away from his premises" is independent of any other language, Powers necessarily ignores the Ohio common law and the legislative history, which limit the exemption from criminal prosecution under R.C. 959.02 to proscribed acts on fenced land. His proposed interpretation renders the words "trespassing upon his enclosure, or while it is so trespassing" without effect and mere surplusage. Logically, the intent of the language is to allow the landowner to continue to drive the animal away outside the enclosure.

As for the consequence of the interpretation proposed by Powers, the displeasure of suburban residents provoked by their neighbors' pets may be reasonable, but the legislature surely did not intend to change the common law as to condone a landowner's retaliatory response with impunity against man's best friend. This is not the way of a kinder and gentler nation.

Therefore, I would affirm Powers's conviction.