DECISION AND JUDGMENT ENTRY
This case comes before the court as an accelerated appeal from a judgment of the Maumee Municipal Court, which granted appellees' motion to dismiss.
The following facts are relevant to this appeal. On July 6, 1999, appellees Dale Beck and James Fahrer were charged in Maumee Municipal Court in connection with the stabbing of a dog. Fahrer's complaint states that "* * * while having a 2 1/2 year old Chocolate Labrador Retriever restrained on his property, James K. Fahrer provided a knife and pick-like instrument to Dale Beck who used said items to stab the above-described dog for the purpose of causing injury/death to said dog, the property of the Maluso family." Beck was charged with injury of animals in violation of R.C. 959.02, and Fahrer was charged with complicity to injury of animals, in violation of R.C. 2923.03 and R.C.959.02.
Both men filed motions to dismiss, claiming R.C. 959.02 was void for vagueness and that it failed to state an offense upon which criminal liability could be predicated. On February 17, 2000, the trial court granted these motions. Appellant, the state of Ohio, filed a timely notice of appeal February 23, 2000, and the Toledo Humane Society filed a brief of amicus curiae in support of that appeal. On March 3, 2000, this court ordered that Beck and Fahrer's appeals be consolidated pursuant to App.R. 3(B).
Appellant sets forth the following assignment of error:
 "THE TRIAL COURT ERRED IN GRANTING THE DEFENDANT-APPELLEES' [SIC] MOTION TO DISMISS WHEREIN THE TRIAL COURT HELD THAT R.C. SECTION 959.02 REVISED CODE FAILED TO CONFORM WITH THE CULPABLE MENTAL STATE AND CRIMINAL LIABILITY REQUIREMENTS SET FORTH IN THE REVISED CODE."
R.C. 959.02 states:
 "No person shall maliciously, or willfully, and without the consent of the owner, kill or injure a horse, mare, foal, filly, jack, mule, sheep, goat, cow, steer, bull, heifer, ass, ox, swine, dog, cat, or other domestic animal that is the property of another. This section does not apply to a licensed veterinarian acting in an official capacity."
R.C. 2901.21 states in pertinent part:
 "(A) Except as provided in division (B) of this section, a person is not guilty of an offense unless both of the following apply:
 (1) His liability is based on conduct which includes either a voluntary act, or an omission to perform an act or duty which he is capable of performing;
 (2) He has the requisite degree of culpability for each element as to which a culpable mental state is specified by the section defining the offense.
 (B) When the section defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in such section, then culpability is not required for a person to be guilty of the offense. When the section neither specifies culpability nor plainly indicates a purpose to impose strict liability, recklessness is sufficient culpability to commit the offense.
(C) As used in this section: * * *
 (3) "Culpability" means purpose, knowledge, recklessness, or negligence, as defined in section 2901.22 of the Revised Code."
Appellees argue essentially the same point in their individual briefs, that R.C. 959.02 (effective October, 1953) does not state a criminal offense and is void for vagueness because the mens rea terms it employs, namely "willfully" and "maliciously", are "irreconcilable" with the four mental states set forth in R.C. 2901.21 and R.C. 2901.22 (effective January, 1974). Appellees further postulate that "willfully" and "maliciously" are incapable of definition, and that individuals of common intelligence cannot determine what conduct is prohibited by R.C. 959.02, thereby leading to arbitrary and discriminatory enforcement. Under appellees' proposed interpretation, no person can be found guilty of R.C. 959.02.
However, the Ohio Supreme Court has stated:
 "The General Assembly is presumed not to intend any ridiculous or absurd results from the operation of a statute which it enacts, and, if reasonably possible to do so, statutes must be construed so as to prevent such results." Crowl v. DeLuca (1972), 29 Ohio St.2d 53, 58, citing to the second paragraph of the syllabus in State, ex rel. Haines, v. Rhodes (1958), 168 Ohio St. 165.
This position was taken by the Ohio Supreme Court as far back as 1853 when it stated:
 "In the interpretation of statutes, words clearly expressive of the sense and manifest intention of the law are to be taken literally. But it is a fundamental rule of construction, that the language of a statute is to be interpreted according to the sense in which the terms are employed and the plain intention of the Legislature. The great object of the rules and maxims of interpretation has been to discover the true intention of the law. We are taught by the maxim, Qui haeret in litera haeret in cortice, that he who considers the mere letter of an instrument, goes but skin deep into its meaning. Regard must be had to the real object of the law, and the effect and substance of the subject matter, and not barely to the nicety of form or circumstance. The reason, intent, and spirit of a law, therefore, must often prevail over the literal import of the terms employed. The circumstances and relations of things change, so that after the lapse of time, we must sometimes give up either the letter of a law or its true intent. It is not necessary to refer to precedent to sustain the position that where the literal construction of a statute would lead to gross absurdity, or where, out of several acts touching the same subject matter, there arise collaterally any absurd consequences, manifestly contradictory to common reason, the obvious intention of the law must prevail over a literal interpretation, and it is even said, that provisions leading to collateral consequences of great absurdity or injustice, may be rejected as absolutely void." Slater v. Cave (1853), 3 Ohio St. 80, 82-83.
By enacting R.C. 1.49, the General Assembly set forth some of these basic rules of statutory construction, providing:
 "If a statute is ambiguous, the court, in determining the intention of the legislature, may consider among other matters:
(A) The object sought to be attained;
 (B) The circumstances under which the statute was enacted;
(C) The legislative history;
 (D) The common law or former statutory provisions, including laws upon the same or similar subjects;
(E) The consequences of a particular construction;
(F) The administrative construction of the statute."
In addition, R.C. 1.42 states:
 "Words and phrases shall be read in context and construed according to the rules of grammar and common usage. Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly."
In this case, we need only define either willfully or maliciously since they are connected by the disjunctive "or" within the language of the statute. We first look to R.C. 2901.22 itself. The Legislative Service Commission Commentary states:
 "Purpose is defined in terms of a specific intention either to cause a certain result, or to engage in conduct of a certain nature regardless of what the offender intends to accomplish through that conduct.
"Purposely" in the new code equates with "purposely,"
 "intentionally," "willfully," or "deliberately" in the former law."
Indeed, it would appear that by including the term, "willfully" in the comment, the legislature has bridged the gap between the language used in R.C. 959.02 and that used in R.C. 2901.21 and R.C. 2901.22.
Furthermore, Black's Law Dictionary, Seventh Edition (1999), defines "willful" as:
 "Voluntary and intentional, but not necessarily malicious. * * * The word `wilful' or `wilfully' when used in the definition of a crime, it has been said time and again, means only intentionally or purposely as distinguished from accidentally or negligently * * *."
Surely the legislature did not intend to condone the killing or injuring of domestic animals listed in R.C. 959.02 when it enacted R.C.2901.21 and R.C. 2901.22. By applying the principles of statutory construction long followed by courts in the interpretation of statutes, including the apparent object of R.C. 959.02, its legislative history, the common usage of terms, and the adverse consequences of a contrary construction, we conclude that "willfully" as it appears in R.C. 959.02
means "purposely" as it appears in R.C. 2901.22.
We will not address the constitutional issue raised by appellees in this case because, "Where a case can be determined upon any other theory than that of the constitutionality of a challenged statute, no consideration will be given to the constitutional question." InterstateMotor Freight Sys. v. Bowers (1955), 164 Ohio St. 122, paragraph two of the syllabus.
Consequently, appellant's assignment of error is found well-taken, and the judgment of the Maumee Municipal Court is reversed. This matter is remanded to the trial court for further proceedings consistent with this judgment. Appellees are ordered to pay the costs of this appeal.
 JUDGMENT REVERSED.
State v. Beck Fahrer
L-00-1061 L-00-1062
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
 ______________________________________________ Melvin L. Resnick, J., JUDGE
 Richard W. Knepper, P.J., CONCUR., JUDGE
James R. Sherck, J., dissents.