**BOARD OF TRUSTEES OF ALLEN TOWNSHIP, Appellant,**

**v.**

**CHASTEEN, Appellee.**

[Cite as *Allen Twp. Bd. of Trustees v. Chasteen* (1994), 97 Ohio App.3d 250.]

Court of Appeals of Ohio,
Ottawa County.

No. 93OT055.

Decided Sept. 23, 1994.

*Stephen E. Cottrell,* for appellant.

*Michael Toney,* for appellee.

*Per Curiam.*

This is an appeal from a September 14, 1993 judgment entry by the Ottawa County Court of Common Pleas in favor of appellee, O.E. Bud Chasteen. This appears to be a case of first impression in Ohio, which presents the issue of whether the application of contents from residential septic tanks, grease traps and portable toilets to farmland can be prohibited by township regulation. Appellant, Board of Trustees of Allen Township, presents one assignment of error:

"The trial court erred in not granting an injunction and not enforcing the Allen Township Zoning Ordinance prohibiting the dumping of septage and/or sewage against Defendant."

Appellant brought suit against appellee on July 16, 1992, to enforce Section 1–B–6 of the Allen Township Zoning Resolution, which reads in pertinent part: "The dumping and/or burying and/or spreading, in any manner, of sewer [*sic*] and/or sewer sludge and/or industrial waste is fully prohibited * * *."

A temporary injunction was issued by a referee on October 5, 1992 to prevent appellee from dumping the contents of his vacuum tank truck, used to clean septic tanks, grease traps, and portable toilets, onto farmland. Following a bench trial, the trial judge dissolved the temporary injunction and dismissed the suit against appellee on September 14, 1993. The testimony presented at the bench trial revealed the following information.

Appellee was called on cross-examination in appellant's case-in-chief, and testified again in his own behalf when he presented his defense. His testimony established that he owns and operates A–1 Septic Tank Cleaning Service, and that he also owns and farms a tract of land in Allen Township. Appellee's septic tank cleaning business entails operations to clean out residential septic tanks and grease traps. In addition, appellee cleans out sixty-five portable toilets, which he owns and rents out for commercial use.

Appellee testified he has no control over what chemicals or other materials are put into the septic tanks or grease traps he cleans. Appellee does have some control over the material in the portable toilets, and testified that he adds a chemical to the toilets to inhibit the growth of bacteria, thereby retarding the breakdown of the waste in the portable toilets.

Appellee pumps the contents of the septic tanks, grease traps and portable toilets into his vacuum tank truck. He then dumps the contents of his vacuum tank truck onto one field of his farmland, and occasionally onto the farmland of three or four other farmers, with their permission. He testified that one pass over one end of the field empties his truck of its contents. Once the contents are

dumped, he uses machinery to disk the materials into the ground, so that the sun and air will not evaporate the nitrogen and other beneficial elements from the materials. He then waits for a year before planting any crops on the area where the materials were spread. He never collects enough materials to cover the entire field in one year, so he rotates the areas where the materials are spread.

Appellee stated the use of the materials from his vacuum truck on agricultural land is an accepted farming practice, because the material has a recognized fertilizer value. Because he never has enough materials to cover all of his farmland, appellee pays a commercial firm to apply chemical fertilizer to the other portions of his land. Given the choice, he prefers to use the materials from the septic tanks and portable toilets to fertilize, rather than the commercial chemical fertilizer.

Appellee spreads the contents of his vacuum tank truck onto his farmland at all times of the year, as his septic tank business requires. Although he dumps this material onto his farmland at all times of the year, appellee testified that he has not done so in the winter for the last three or four years. On two occasions appellee was forced to dump the contents of his vacuum tank truck on areas of his land not used for farming. One time was due to a leaky valve and the other time was due to appellee misjudging the amount of material in his truck.

Another witness called by appellant was Carl Koebel, the Director of Environmental Health for Ottawa County. Koebel testified that the county does not regulate either the application of septage to farmland or the casual dumping of sewage. The county health department does regulate the dumping of materials from septic tanks and portable toilets if the materials are repeatedly dumped in one area several times during a year. However, one application of the materials to farmland per year for use as fertilizer is not regulated by the health department.

In response to questions posed by the trial judge, Koebel drew definitional distinctions between septage, sewage and sludge. Koebel testified that the material removed from septic tanks contains both septage, which has been subjected to decomposition by anaerobic bacteria, and sewage. The contents of septic tanks can contain undigested solids, such as prophylactics, toilet tissue and hygiene products. Sewage is a "broad term given to all wastewater that carries vegetable or chemical waste through either tubs, sinks, bathtubs, showers * * *." Koebel testified that the waste from portable toilets is sewage, because of the addition of chemicals to the human waste. Sludge is the settlings from a municipal sewage treatment system which remain after sewage has gone through

a three-step treatment process.[1] Koebel stated that a significant difference between sludge and the contents of septic tanks is the presence of undigested solids in the contents of septic tanks. The undigested solids have no fertilizer value. However, Koebel testified that sludge and septage are commonly used as a fertilizer on agricultural lands, and that aside from the undigested solids, the materials from septic tanks do have a recognized fertilizer value. He also testified that the undigested solids are only a small portion of the materials removed from the septic tanks and portable toilets.

At the close of Koebel's testimony, appellant rested its case, and appellee presented his defense. Appellee took the stand again and testified in more detail about his operations. Appellee then called Edward Draper, a retired farmer, who testified that he had spread the contents from septic tank cleaning trucks on his farmland for thirty years. He testified that the application of the contents resulted in his wheat growing higher and greener, and that appellee and another individual provided the contents without charge. Draper never applied the contents within a quarter-mile of any buildings to be "safe" and to ensure that neighbors would not complain on the basis of the odor which emanates from the product.

Appellant then called a rebuttal witness, Fred Bringe, a farmer and the chairman of the Ottawa County ASC Committee. Bringe, who has been a farmer since 1961, testified that he knew of no other farmers in Allen township, aside from appellee, who used contents dumped from residential septic tanks, grease traps and portable toilets on their farmland. Bringe testified that the low amount of nutrient value gained from spreading those materials on farmland did not justify the practice, because of the sanitary and health problems the materials present.

At the close of testimony, a discussion occurred between counsel and the trial judge concerning the definitions of the terms found in the township regulation, including sewage and sewage sludge. Appellant argued that the term "sewage sludge" referred to untreated sludge coming from sewers. Appellee argued that the term meant municipally treated sewage sludge. Appellee also contended that if the resolution was referring to municipally treated sludge, the resolution was in conflict with *Perry v. Providence Twp.* (1991), 63 Ohio App.3d 377, 578 N.E.2d 886, a previous case from this court in which this court affirmed a trial court's factual finding that spreading treated sludge on farmland as fertilizer is an

---

1. Koebel testified that the three-step process is (1) aerobic bacteria treatment; (2) settling stage (prior to this stage the undigested solids are removed); and (3) adding of chlorine to destroy any remaining bacteria.

accepted agricultural use.[2]  As a result of the discussion, the trial judge asked the parties to submit information and opinions "regarding the definition of sewage and/or sewer sludge as it applies to the pending case."  Appellant responded that all necessary information had been presented to the court at trial.  Appellee submitted documents from the Ottawa County Department of Health, which contained discussion about new federal regulations dealing with septage and sewage.

The trial court considered all of the information it received, and filed a twenty-four-page decision and judgment entry on September 14, 1993.  The two major issues in this case were (1) what label or definition applied to the materials that appellee was spreading on his land, and (2) once the label was assigned, could the activity of appellee be regulated by the township?

The trial judge considered both issues, and used a two-step process to determine that the temporary injunction against appellee should be removed.  First, he labelled the substance which appellee spreads on farmland as septage, using the definition found in the new federal regulations.  Second, he applied out-of-state case law to the facts of this case to make the finding that the application of septage to farmland is an agricultural use or purpose.

Appellant asserts that there was insufficient evidence for the trial court to reach its finding that the material appellee spreads onto farmland is septage, and that his activities are an agricultural use of land.  Appellant's assignment of error is a challenge to the trial court's decision on the basis of manifest weight of the evidence.

Appellee responds that the material he spreads is septage.  He argues that his activity is an agricultural use of land which cannot be regulated by the township.

We begin by first considering whether the trial judge erred in his determination that the materials at issue in this case are domestic septage.  As previously noted, the township resolution at issue in this case contains many terms which are not defined in the resolution, including sewage and sewage sludge.  When a term is used in a statute or resolution, but is not assigned a specific definition in the statute or resolution, the courts in this state are guided by the provisions of R.C. 1.42, which state:

"Words and phrases shall be read in context and construed according to the rules of grammar and common usage.  Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly."

---

2.  Because the facts show the material involved in this case is not municipally treated sludge, we need not, and do not address the question of whether or not the township resolution is enforceable in regard to its provisions relating to sludge.

■ In this case, the trial judge acknowledged that the only evidence defining the substance which appellee applies to his farmland was provided by Koebel. The trial judge chose to reject that testimony, however, and instead relied upon the definitions found in the new federal EPA regulation.

■ The use of the new federal regulation to determine the definition of the material spread by appellee is faulty for several reasons. First, the use of the regulation was unnecessary and was outside the scope of the directive for statutory construction found in R.C. 1.42. The trial court had testimony presented from an expert witness, which was undisputed, and which provided the commonly understood meanings of the terms in question by those involved in agriculture, and in the disposal of human waste products in Ohio. The definition of sewage given by the expert mirrors the definition of sewage found in an analogous state statutory section, R.C. 6111.01(B).[3] Second, the federal regulation was not in effect at the time of the dumping and is not retroactive. Third, the regulation definitions have not been adopted in Ohio. Fourth, even if the regulation was applicable, our review of the definitions and facts in this case shows that the trial court misapplied the definitions provided in the regulation, when it determined the materials were domestic septage, because domestic septage does not include grease.[4] Thus, as a matter of law, the definitions found in the federal regulation are inapplicable to the facts in this case. The only competent, credible evidence which remains as to the commonly understood meanings of the terms at issue in this case is the testimony of Koebel. Applying the definitions provided in Koebel's testimony, which mirror the definition of sewage found in R.C. 6111.01(B), to the facts in this case, this court rules that the materials spread by appellee are sewage.

■ We now turn to the second issue: whether the trial court's conclusion, that appellee's activities are an agricultural use of land which are not subject to the township resolution, is against the manifest weight of the evidence. Appellant contends that application of sewage is not an agricultural use of land, because the sewage is not an appropriate fertilizer. Appellant argues that its resolution must be enforced to prohibit appellee from any further activity

---

3. R.C. 6111.01(B) reads:

" 'Sewage' means any liquid waste containing animal or vegetable matter in suspension or solution, and may include household wastes as commonly discharged from residences and from commercial, institutional, or similar facilities."

4. Section 503.9(f), Title 40, C.F.R. expressly states that grease from grease traps is not included in the definition of domestic septage. The material which appellee applies to his land contains not only septage and waste from portable toilets but also grease from grease traps. Accordingly, the substance which appellee dumps is not domestic septage under the federal regulation.

involving the spreading of sewage on farmland. Appellee contends that his materials are an appropriate fertilizer for farming. He further contends that the spreading of fertilizer is an agricultural purpose, which is not subject to the township resolution.

Townships in Ohio are granted authority to regulate the purposes for which land may be used, when the regulations are promulgated to promote "the public health, safety and morals," R.C. 519.02. However, the powers of the townships are not unlimited. R.C. 519.21(A) places one limitation on the powers of townships by stating: "sections 519.02 to 519.25 of the Revised Code confer no power on any township * * * to prohibit the use of any land for agricultural purposes." Therefore, if the activity appellee participates in is considered an agricultural purpose, the township is powerless to regulate the activity.

In Ohio, the determination of whether an activity qualifies as use of land for an agricultural purpose is a finding of fact. *State v. Huffman* (1969), 20 Ohio App.2d 263, 269, 49 O.O.2d 357, 361, 253 N.E.2d 812, 816–817. App.R. 12(C) gives appellate courts power to overturn a trial court's finding of fact when the finding is made by the trial court and not by a jury. However, only when the finding of fact is found to be against the manifest weight of the evidence will an appellate court overturn the finding. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 10 OBR 408, 461 N.E.2d 1273.

A finding of fact is not against the manifest weight of evidence if the finding is supported by "some competent credible evidence." *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus. Therefore, if the trial court's findings that the application of appellee's materials to farmland is an agricultural use was supported by "some competent credible evidence" the finding must be undisturbed and the trial court's dismissal of the case must be affirmed. *Id.*

As we previously noted, testimony was presented to the trial court that the materials spread by appellee have fertilizer value, and that the use of the materials on farmland is an agricultural use or purpose. The trial court ruled that the application of materials from appellee's vacuum truck to farmland is an agricultural purpose. While the trial judge erroneously labeled the material as septage, he clearly made a finding of fact that the spreading of the material as fertilizer is "a well-recognized benefit to agricultural land." He also made a finding that the use of the material as fertilizer for farming is commonplace. His rulings on these factual matters implicitly show that he chose to believe the testimony presented which showed that the use of the materials as fertilizer is an agricultural purpose. The trial judge was in the best position to determine the credibility of the witnesses, and we will not reverse his determination on appeal.

See *Seasons Coal Co. v. Cleveland,* 10 Ohio St.3d at 80, 10 OBR at 410–411, 461 N.E.2d at 1276.

The sole assignment of error presented by appellant is not well taken. The judgment of the Ottawa County Court of Common Pleas is supported by some competent, credible evidence, and is affirmed. Appellant is ordered to pay the court costs of this appeal.

*Judgment affirmed.*

HANDWORK, GLASSER and MELVIN L. RESNICK, JJ., concur.