[Cite as *Benton Twp. v. Rocky Ridge Dev., L.L.C.*, 2020-Ohio-4162.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
OTTAWA COUNTY

| | |
|---|---|
| Benton Township | Court of Appeals No. OT-19-010 |
| Appellee | Trial Court No. 17CV64 |
| v. | |
| Rocky Ridge Development, LLC | **DECISION AND JUDGMENT** |
| Appellant | Decided: August 21, 2020 |

* * * * *

Robert B. Casarona and James J. VanEerten, Ottawa County
Prosecuting Attorney, for appellee.

Matthew D. Harper, Brian P. Barger, Barry W. Fissel and
Christopher F. Parker, for appellant.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} Appellant, Rocky Ridge Development, LLC ("Rocky Ridge"), appeals from

the March 1 and June 4, 2019 judgments of the Ottawa County Court of Common Pleas

granting summary judgment to appellee, Benton Township, and a permanent injunction

against Rocky Ridge; the February 23 and March 8, 2017 judgments granting temporary and preliminary injunctions against Rocky Ridge; and the May 4, 2018 judgment denying the motion of Rocky Ridge to dismiss the complaint. For the reasons which follow, we affirm.

{¶ 2} On appeal, appellant asserts the following assignments of error:

FIRST ASSIGNMENT OF ERROR: Whether the Trial Court erred in finding there was no conflict between local zoning ordinances and state law by granting a temporary restraining order, preliminary injunction, and permanent injunction against Rocky Ridge based on alleged violations of the Benton Township Zoning Resolution ("BTZR") even though the BTZR is preempted by Ohio's statewide general law authorizing Rocky Ridge to beneficially reuse Drinking Water Treatment Material ("DWTM"), consisting of spent lime from the City of Toledo's water treatment plant?

SECOND ASSIGNMENT OF ERROR: Whether the Trial Court erred in granting a temporary restraining order, preliminary injunction, and permanent injunction against Rocky Ridge based on alleged violations of the BTZR even though R.C. § 519.21 bars regulation of DWTM by the Township?

THIRD ASSIGNMENT OF ERROR: Whether the Trial Court erred in holding that Rocky Ridge's beneficial reuse of DWTM violated any provision of the BTZR?

2.

## Factual Background

{¶ 3} The Benton Township Zoning plan approved in 1964 classified the area of the now closed StoneCo quarry located on State Route 590 in Ottawa County, Benton Township, Ohio, as "M-3 Manufacturing." The current Benton Township Zoning Resolution (hereinafter "BTZR") was adopted effective September 2013. The M-3 classification permits "agriculture, heavy manufacturing, automobile service stations, transport and trucking terminal, wholesale business, warehousing, topsoil removal, manufacturing of lime, cement and chemical fertilizer, public service facility, accessory uses & buildings." BTZR Art. IV. StoneCo operated a quarry on the site until December 17, 2014. Rocky Ridge now owns the quarry and undeveloped contiguous property.

{¶ 4} Mark Messa, Director of Regional Planning for Ottawa County, testified the property at issue in this case, the undeveloped property contiguous to the quarry, is comprised of three parcels, one entirely zoned A-3, agricultural (Parcel No. 00402150-1739-000, hereinafter "1739"), another to the east zoned primarily M-3, with approximately one-third of the parcel zoned A-3 (Parcel No. 004013740-1724-000, hereinafter "1724"), and a third parcel to the south, is zoned entirely A-3 (Parcel No. 00412500-1565-100, hereinafter "1565").

{¶ 5} In 1988, StoneCo applied to expand its operation by having 33 additional acres of its 200 acres rezoned from A-3 Agricultural to M-3 Manufacturing. An amended request for rezoning 25 acres with an 8-acre buffer zone on the southern side of the

3.

quarry remaining as A-3 property to protect nearby residents was approved. The A-3 classification permits "single-family dwelling, agriculture, plan cultivation, forestry, farm vacation enterprises, public uses, public service facilities, semipublic uses, stabling and care of horses and ponies, accessory uses & buildings, farm pond/retention pond/ recreation pond, home office, garage sale, yard sale, barn sale." BTZR Art. IV. The quarry, which is entirely within the M-3 zoning, is not involved in the present action.

{¶ 6} This case involves the operation of Rocky Ridge to blend spent lime into the soil on its A-3 zoned property. Limestone is used as a conditioner in the city of Toledo water treatment plant and, afterward, is transferred to large lagoons where the solids settle and the decanted water is discharged into state waters. The Ohio Environmental Protection Agency ("OEPA") has determined the remaining industrial waste solids (known as "lime residuals" or hereinafter as "spent lime") have a beneficial use as general fill when mixed with soil. The OEPA has exclusive authority over the determination of how and where solid and hazardous wastes may be disposed. R.C. Chapter 3745. R.C. 6111.03(J) and 6111.46 empower the director of environmental protection to oversee the disposal of industrial waste through a Land Application Management Plan ("LAMP") permit.

{¶ 7} On November 13, 2014, the OEPA granted a LAMP permit to Stansley Industries, Inc., permitting the company to blend spent lime with soil and the use of the blended mixture as general fill to increase elevation and improve drainage on its property. On February 14, 2017, the OEPA modified and superseded the prior LAMP permit to add

4.

Rocky Ridge as a permittee and modified the conditions imposed on the operation by specifying that the Rocky Ridge Benton Township property is the site on which the fill operations are authorized.

{¶ 8} John Taddonio, the manager of business development and operations for Rocky Ridge since November 2015, testified Rocky Ridge mined limestone at the quarry in 2016 and 2017 and used the limestone for a road base to provide access around the quarry. It also partially dewatered the quarry by pumping the water to a ditch alongside State Route 590. Rocky Ridge began its blending operations under the LAMP in approximately April 2016, on the land outside of the quarry by hauling in spent lime, moving topsoil between the parcels as it mixed the soil with the spent lime, and returned the blended soil to different locations on the property. Rocky Ridge anticipates taking approximately a million cubic yards of the spent lime over a ten-year period. Taddonio further testified that the Benton Township Trustees did not object to the blending operations of Rocky Ridge after a tour of the property. They objected only to placement of material in the quarry. Residents, however, began to question the blending operation.

{¶ 9} On July 22, 2016, Rocky Ridge submitted an application to the OEPA for authorization for an Integrated Alternative Waste Management Plan ("IAWMP") to allow the disposal of spent lime into the closed StoneCo quarry. R.C. 3734.02(G) and Ohio Adm.Code 3745-27-05(A)(4). Rocky Ridge intends to use the spent lime to fill the quarry by placing the spent lime in blending areas where it would be dried, mixed, compacted, and tested. After the quarry is filled, Taddonio testified, Rocky Ridge

5.

intends to have the entire property developed as a recreation area as part of its surface mining reclamation plan approved by the Ohio Department of Natural Resources and required by the surface mining permit and R.C. 1514.02. Benton Township, however, argues the deed restrictions require that the quarry be converted into use as a recreational lake. The OEPA found the initial application "incomplete and inadequate" because the application lacked a blending of waste to soil set a ratio of 2/3 soil to 1/3 waste and an offsite borrow source for the soil. Therefore, Rocky Ridge planned to construct a borrow pit/pond on the north end of the property in order to continue the blending operation under the LAMP permit.

{¶ 10} In late 2016, Taddonio started the process for construction of a 20-acre pond on the southern parcel zoned A-3. He obtained approval of the County Health Department, obtained a storm water discharge from the OEPA, and provided the Ottawa County Engineer, Ronald Paul Lajti, Jr., with the proposed plans. Because it was a 20-acre pond, Lajti checked with the Ohio Department of Natural Resources and the OEPA as to whether this should be classified as a pond or whether the pond was actually a borrow pit because the dirt was being used in the blending operation. He was never able to receive a clear answer on the issue and, therefore, proceeded to review the permit as a typical pond. Eventually, with the cooperation of Taddonio, who addressed specific issues raised by Lajti, he approved the permit. Lajti passed the pond permit on to zoning inspector Mike Reif for processing.

6.

{¶ 11} Joseph Helle, of Oak Harbor Aerial Imaging Resources, LLC, testified Benton Township residents hired him in 2016 to take aerial photographs of the activities on the property. Benton Township entered into evidence 22 photographs of the site taken from November 2016, through January 2017. The photographs depict dump trucks unloading material and creating piles in the operating area, which is the southern half of Parcel Nos. 1739 and 1724 and south of the quarry boundaries. Mike Reif, a nearby resident and Benton Township Zoning Inspector, testified he observed industrial or manufacturing activity occurring in Parcel Nos. 1739 and 1724 and some activity regarding the construction of a pond, all of which he confirmed were depicted in the aerial photographs.

{¶ 12} In late 2016, Lajti received a complaint from a resident about the operations on the Rocky Ridge property. The site was outside the county engineer's oversight, but when he received a ditch cleaning permit notice from the Ohio Public Utilities regarding the ditch along State Route 590, Lajti contacted Taddonio who gave Lajti a tour. Lajti confirmed that Rocky Ridge was discharging water to the appropriate drainage area. While Lajti was on the site, he also observed Rocky Ridge was dumping spent lime on the A-3 zoned property, but he did not discuss the zoning issue at that time.

{¶ 13} Lajti also became involved in a complaint regarding flooding on property near the southern end of the Rocky Ridge site. Lajti recalled that flooding had occurred on this property once before. However, Lajti could not recall there ever having been a drainage swale along the side of the property where it was then flooded. His employees

7.

cleared debris found on the lid of the catch basin. Lajti testified he also met with Taddonio to discuss whether an earth dike built along the southern side caused the flooding. Taddonio proposed a solution that would drain the water and Rocky Ridge removed the dike for use in the blending process. They also agreed that the flooding could have been due to a combination of other factors such as the intense rainfall and debris on the catch basin.

{¶ 14} At a meeting in late December 2016, Lajti, the zoning inspector, Reif, Taddonio, and a township trustee met to discuss zoning issues and discovered Taddonio was utilizing a tax auditor's map which indicated that the entire parcel was zoned industrial. The official township zoning map correctly shows the A-3 zoning. Lajti testified the website from which Rocky Ridge obtained the auditor's map included a disclaimer that the actual township zoning map was held at the Regional Planning Office of Ottawa County. Reif asserted that at this time Rocky Ridge became aware that the property where the blending activities were occurring and the pond was being constructed were zoned A-3, which was in violation of the township zoning resolution. Reif testified Taddonio admitted to a zoning violation and they agreed the appropriate parties needed to sort out the difference between the maps. Taddonio, however, denied admitting to a violation but agreed the appropriate parties would need to determine the correct zoning.

{¶ 15} The zoning inspector testified township zoning resolution Sec. 706 governs the construction of a pond. While Rocky Ridge met the two requirements of Sec. 706, the zoning inspector had not approved the pond permit because of its size. The zoning

8.

application is now pending before the zoning board for administrative review. Reif testified that when Taddonio submitted the application, he admitted that Rocky Ridge had already started construction of the pond because they needed dirt for the blending operation.

{¶ 16} Reif testified that he never received statements or plans regarding the operations of Rocky Ridge in order to determine whether there were dangerous or objectionable elements pursuant to zoning resolution Sec. 800.2. However, he had observed certain zoning violations: "doing industrial work, hauling dirt, hauling materials," building dikes," and digging holes to bury soil blended with the spent lime along the M-3 zoned area into the A-3 zoned area and the A-3 buffer zone created in 1988. He further testified the zoning resolutions required a conditional use permit prior to removing topsoil in an A-3 district and digging holes to place the spent lime violated Sec. 1102(D) of the zoning resolution because it is an industrial activity on A-3 zoned property. The BTZR defines "topsoil removal" as "where the top layer of soil is stripped from the property with no intent to further develop the underlying property." Reif never observed Rocky Ridge removing topsoil off of the collective A-3 properties. Furthermore, Reif acknowledged that farmers use lime on their fields and sometimes use spent lime or reworked lime similar to the spent lime in this case.

{¶ 17} Reif instituted criminal charges against Rocky Ridge in October 2016, because of the zoning violations and advised the director of the OEPA of the criminal prosecutions filed against Rocky Ridge for zoning violations.

9.

**Complaint for Injunctive and Declaratory Relief**

{¶ 18} On February 23, 2017, Benton Township filed a complaint for injunctive and declaratory relief against Rocky Ridge and Stansley Industries, Inc., c/o Custom Ecology of Ohio, Inc. Benton Township asserted two claims for relief. First, Benton Township sought a permanent injunction to prevent Rocky Ridge from violating the terms of the LAMP permit and the BTZR, which endangered the public and environment and/or created a nuisance. On August 7, 2018, Benton Township dismissed its nuisance claim without prejudice.

{¶ 19} Second, Benton Township sought a permanent injunction to prevent Rocky Ridge from continuing to violate the BTZR sections which require a valid zoning certificate for the use of the quarry and surrounding property, digging a borrow pit under the guise of creating a pond when the soil is actually being used for mixing with spent lime, in violation of R.C. 519.23 and the BTZR endangering nearby residential property with flooding and erosion damage and negative impacts on drinking water quality and volume. Benton Township also sought declaratory judgment that the defendants must comply with the BTZR. However, by the time of the preliminary injunction hearing, Rocky Ridge had ceased digging in the area of the pond and the township indicated it was not seeking an injunction regarding this activity because the approval of the pond was being reviewed by the zoning board for administrative review.

{¶ 20} The trial court granted a temporary order on February 23, 2017, following a non-evidentiary hearing, which enjoined Rocky Ridge and Stansley Industries, Inc.,

10.

"from operating in the township until and unless they are in compliance with the Benton Township Resolution and the laws of the State of Ohio." Immediately afterward, when Rocky Ridge ceased its soil-blending operations, the OEPA issued a notice that Rocky Ridge was in violation of the LAMP permit by failing to complete soil stabilization work on the property as required by the National Pollutant Discharge Elimination System permit issued in conjunction with the LAMP permit.

{¶ 21} The OEPA sought to intervene on March 1, 2017, to challenge whether Benton Township was circumventing the jurisdiction of the Environmental Review Appeals Commission (hereinafter "ERAC") by challenging the LAMP permit. The trial court ultimately denied the motion to intervene in its March 1, 2019 judgment. On March 3, 2017, Rocky Ridge moved to dismiss the action and dissolve the temporary restraining order based on the same jurisdictional argument, which the trial court ultimately denied on May 4, 2018.

{¶ 22} Following a preliminary injunction hearing on March 7 and 8, 2017, the trial court granted a temporary and preliminary injunction on March 8, 2017. At the beginning of the hearing, the trial court acknowledged its limited jurisdiction and stated it did not have authority to review OEPA decisions or the LAMP permit. Instead, the trial court indicated the focus of the hearing would be whether there were zoning violations on the A-3 parcels numbered 1739 and 1724 and whether the state law governing environmental protection preempts the zoning resolutions. Benton Township stipulated it was not asserting a claim of a violation of BTZR Secs.103.7 or 103.8.

11.

{¶ 23} The trial court ultimately held in its March 8, 2017 order that digging cells in the A-3 district and mixing the soil with spent lime and burying it in the cells does not constitute a permitted use under BTZR. The trial court further concluded that the BTZR does not provide a blanket prohibition of the LAMP permit activities in all classifications, but it does prohibit these activities in A-3 districts. Therefore, the court issued a preliminary injunction against Rocky Ridge, its affiliated companies, and individuals acting on behalf of or in concert with these companies, which enjoined and restrained them from operating in Benton Township unless they were in compliance with the BTZR. Rocky Ridge timely appealed from this decision.

{¶ 24} While the case was pending in the trial court and prior to the preliminary injunction hearing, Rocky Ridge and Stansley Industries, Inc., filed a writ of prohibition in the Ohio Supreme Court, to prevent the trial judge from exercising jurisdiction over the LAMP permit arguing it is within the exclusive jurisdiction of the OEPA. On September 21, 2017, after the trial court had granted a preliminary injunction, the Ohio Supreme Court granted the writ of prohibition in part to prevent the trial judge from deciding any issues that properly belong within the exclusive jurisdiction of the ERAC relating to the granting of the LAMP permit and Rocky Ridge's compliance with the LAMP permit. However, the Ohio Supreme Court denied the writ as to all claims involving alleged violations of Benton Township's local ordinances or allegations that the operation is creating a public nuisance. *State ex rel. Rocky Ridge Dev., L.L.C. v. Winters*, 151 Ohio St.3d 39, 2017-Ohio-7678, 85 N.E.3d 717, ¶ 21.

12.

## Permanent Injunction

{¶ 25} The township moved for summary judgment on November 30, 2018, asserting Rocky Ridge cannot ignore the A-3 zoning classification governing the use of portions of their property even when operating under an OEPA Lamp permit. Benton Township narrowed its claim to whether Rocky Ridge was violating the BTZR by (1) failing to obtain valid zoning certificates for the use of the A-3 zoned land for their blending operation, which involved blending soil with spent lime and reburying the blended soil in cells with heavy industrial equipment, trucking material throughout the property, storing building materials, parking heavy industrial equipment, constructing asphalted roads, installing drainage pipes and pumping water from the site, and changing the elevation of the property in support of the blending operation, all of which will permanently change the character and long-term use of the A-3 property without a conditional use permit; and (2) removing topsoil with no further intent to develop the underlying property.

{¶ 26} Rocky Ridge opposed the motion presenting several arguments: (1) Benton Township cannot prohibit the LAMP operations, which specifically authorized the blending operations to occur on the land at issue; (2) Benton Township has repeatedly alleged the spent lime are industrial waste and relies on BTZR Sec. 103.7, which prohibits the dumping of industrial waste in the township, and BTZR Sec. 103.8, which prohibits landfills for solid waste disposal. Rocky Ridge further argues state law, R.C. Chapter 6111, governs disposal of industrial waste and, therefore, these zoning

13.

resolutions are preempted by state law and are unenforceable; (3) the LAMP permit covers all of the Rocky Ridge property and, therefore, unless every specific zoning classification restriction yields to the authority of the OEPA, the resolutions block the blending operation permitted by the OEPA; (4) R.C. 519.21 prohibits the township from banning the use of any land for agricultural purposes and that blending spent lime with the soil and the excavation and processing of topsoil are agricultural uses; (5) even if Rocky Ridge was removing topsoil, the topsoil is not leaving Rocky Ridge's property and the removal is part of the development of the property; (6) Rocky Ridge is not engaged in manufacturing on the A-3 parcels because it is not making a product and the nature of the soil and spent lime do not change after blending; and (7) the injunction sought is impermissibly vague.

{¶ 27} In reply, the township argues R.C. Chapter 519.24 creates a cause of action for local zoning violations. It notes that in its motion for summary judgment it is not challenging the LAMP permit and it is not seeking an injunction based on BTZR Secs. 103.7 or 103.8, which ban dumping or burying industrial waste in all zoning classifications and prohibit landfills respectively. Furthermore, if the trial court found either section is applicable and preempted, Benton Township asserts the trial court should sever these provisions from the BTZR. Finally, Benton Township argues local zoning ordinances are preempted only by general laws of the state which directly conflict. It argues the BTZR and the state environmental regulations are complementary and

14.

independent of each other. Therefore, Rocky Ridge cannot simply ignore the BTZR even if they have a LAMP permit.

{¶ 28} When ruling on the motion for summary judgment in its March 1, 2019 judgment, the trial court found that under the BTZR, the blending operation is a permitted use in a M-3 district, but not in an A-3 district. Furthermore, the trial court found the BTZR does not provide for a blanket prohibition of the LAMP permit activities. Finally, the trial court found there was "clear and convincing evidence that a permanent injunction is necessary to prevent irreparable harm." Therefore, the trial court granted summary judgment to Benton Township.

{¶ 29} In its June 4, 2019 final order, the trial court issued a permanent injunction against Rocky Ridge to enjoin it from "digging of a borrow pit and/or construction of a farm pond, spreading/burying/mixing waste, removing topsoil where such removal is a conditional use, changing the drainage of the property, placing any material into the waters of the state and/or otherwise violating the zoning laws of Benton Township."

{¶ 30} Rocky Ridge appeals from the final judgment. We address the assignments of error out of order and begin with the second assignment of error.

**Second Assignment of Error**

{¶ 31} In its second assignment of error, Rocky Ridge argues the trial court erred in granting a temporary restraining order, preliminary injunction, and permanent injunction when R.C. 519.21 bars local regulation which interferes with the disposal of spent lime for an agricultural purpose. Although Rocky Ridge presented this argument in

15.

its memorandum in opposition and elicited testimony from the zoning inspector that lime and spent lime have an agricultural purpose, the trial court never addressed the argument.

{¶ 32} R.C. 519.21 prevents a township from prohibiting the use of any land for agricultural purposes. To establish that R.C. 519.21(A) applies, Rocky Ridge must establish that it is using its property primarily for an agricultural purpose. *Scioto Twp. Zoning Inspector v. Puckett*, 2015-Ohio-1444, 31 N.E.3d 1254, ¶ 12. R.C. 519.01 defines the term "agriculture" as it is used in R.C. 519.02 to 519.25, as follows:

> farming; ranching; algaculture meaning the farming of algae; aquaculture; apiculture; horticulture; viticulture; animal husbandry, including, but not limited to, the care and raising of livestock, equine, and fur-bearing animals; poultry husbandry and the production of poultry and poultry products; dairy production; the production of field crops, tobacco, fruits, vegetables, nursery stock, ornamental shrubs, ornamental trees, flowers, sod, or mushrooms; timber; pasturage; any combination of the foregoing; and the processing, drying, storage, and marketing of agricultural products when those activities are conducted in conjunction with, but are secondary to, such husbandry or production.

Generally, the determination of whether a specific activity qualifies as an agricultural purpose is a question of fact. *Bd. of Franklin Twp. Trustees v. Armentrout*, 11th Dist. Portage No. 2000-P-0082, 2001 WL 1602669, *2 (Dec. 14, 2001), quoting *Allen Twp. Bd. of Trustees v. Chasteen*, 97 Ohio App.3d 250, 257, 646 N.E.2d 542 (6th Dist.1994).

16.

{¶ 33} In the case before us, we find this assignment of error lacks merit because the disposal of spent lime is not at issue in this case. The township asserts the zoning classifications are designed to prevent the industrial aspects of the blending operation (digging, hauling, mixing) on A-3 property because industrial activities are not permitted on A-3 property. The township also seeks to stop Rocky Ridge from removing the topsoil to be used in the blending process because the BTZR bans removal of topsoil from A-3 property. Benton Township has not challenged the specific activity of burying the spent lime/soil mixture.

{¶ 34} Therefore, we find the issue of whether burying spent lime mixed with soil is an agricultural issue is not relevant to this case. We address the removal of topsoil under the third assignment of error. Accordingly, we find appellant's second assignment of error not well-taken.

### Third Assignment of Error

{¶ 35} In its third assignment of error, Rocky Ridge argues the trial court erred in finding that Benton Township established by clear and convincing evidence that Rocky Ridge violated the BTZR.

{¶ 36} Township trustees may seek an injunction, pursuant to R.C. 519.24, to prevent a property owner within the township from violating a township zoning resolution. Once the township establishes a violation by clear and convincing evidence, the trial court exercises decision in determining whether to grant or deny injunctive relief. R.C. 519.24; *Spencer Twp. Bd. of Trustees. v. Dad's Auto Parts, LLC*, 6th Dist. Lucas

17.

No. L-09-1188, 2010-Ohio-2253, ¶ 21; *Swan Creek Twp. v. Wylie & Sons Landscaping*, 168 Ohio App.3d 206, 2006-Ohio-584, 859 N.E.2d 566, ¶ 23.  Because R.C. 519.24 provides a statutory remedy, the township is not required to establish the requirements for an injunction under Civ.R. 65.  *Ghindia v. Buckeye Land Dev., L.L.C.*, 11th Dist. Trumbull No. 2006-T-0084, 2007-Ohio-779, ¶ 19 (citations omitted).  On appeal, we will not reverse the trial court's judgment absent a showing of an abuse of discretion.  *Garono v. State*, 37 Ohio St.3d 171, 173, 524 N.E.2d 496 (1988), citing *Perkins v. Village of Quaker City*, 165 Ohio St. 120, 133 N.E.2d 595 (1956), syllabus.

{¶ 37} Furthermore, we review the trial court's granting of summary judgment de novo.  *Doe v. Shaffer*, 90 Ohio St.3d 388, 390, 738 N.E.2d 1243 (2000), citing *Grafton v. Ohio Edison Co*., 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996).  Applying the requirements of Civ.R. 56(C), we uphold summary judgment when "the moving party is entitled to judgment as a matter of law" because "there is no genuine issue as to any material fact" and "reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor."  *Harless v. Willis Day Warehousing Co., Inc*., 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978).

{¶ 38} In this case, the trial court found the BTZR prohibited the blending operation and removal of the topsoil in the A-3 district.  As noted before, the A-3 classification under the BTZR permits "single-family dwelling, agriculture, plan cultivation, forestry, farm vacation enterprises, public uses, public service facilities,

semipublic uses, stabling and care of horses and ponies, accessory uses & buildings, farm pond/retention pond/ recreation pond, home office, garage sale, yard sale, barn sale." BTZR, Article IV. Furthermore, this section requires that a land owner obtain a conditional use permit for topsoil removal in an A-3 district. Topsoil removal is defined as: "[a]ny activity where the top layer of soil is stripped from the property with no intent to further develop the underlying property." BTZR Art. II. A zoning certificate must be obtained for a "[c]hange in use of land to a use of a different classification." BTZR Sec. 1102(d).

{¶ 39} Rocky Ridge first argues the removal of topsoil is a use of land for an agricultural purpose and cannot be regulated pursuant to R.C. 519.21 and *Armentrout*, 11th Dist. Portage No. 2000-P-0082, 2001 WL 1602669, at *2 (removal of topsoil for resale is an agricultural use).

{¶ 40} As discussed under Rocky Ridge's second assignment of error, we find R.C. 519.21 is not applicable and the *Armentrout* decision is distinguishable from the case before us. In that case, the topsoil was removed from the area where a pond was being dug and was sold. Thus, the soil was being removed as part of the development of the land. In the case before us, claims regarding the pond were dropped pending the administrative process. Remaining at issue in this case is only the issue of whether Benton Township can regulate the removal of topsoil from the A-3 property without such development. Here, the topsoil is being removed from an area on A-3 property to be altered, amended, and reburied in another area.

19.

{¶ 41} To establish that R.C. 519.21(A) applies, Rocky Ridge must establish that it is using its property primarily for an agricultural purpose. *Scioto Twp. Zoning Inspector v. Puckett*, 2015-Ohio-1444, 31 N.E.3d 1254, at ¶ 12 (4th Dist). Here, Rocky Ridge is using the property for the blending operation and disposal of industrial waste. Because the removal of the topsoil furthers those operations, we cannot find the removal of topsoil under those conditions to be an agricultural purpose. Therefore, we conclude that Benton Township is not restricted by R.C. 519.21(A) from prohibiting topsoil from being removed from an A-3 property.

{¶ 42} Rocky Ridge also argues that it did not violate the BTZR prohibition against removing topsoil because the topsoil never leaves the property except in the pond area as part of the development of the property. This argument is premised on an assumption that the contiguous parcels of the A-3 parcels must be viewed as one because Rocky Ridge owns all of them. First, we find there is no provision under the BTZR that permits zoned parcels to be considered collectively if owned by the same party and, therefore, agree with the trial court that moving topsoil from one agricultural property to another is prohibited. Second, regardless of whether moving topsoil from one A-3 property to another violates the BTZR, we find that excavating cells of soil, blending it with spent lime and reburying the mixture has the same effect as removing the topsoil. The "cells" or pits dug for the blending process are made with heavy equipment and, after the blending process, there is no evidence that the topsoil is not returned to the surface

20.

level.  The function of the zoning resolution is to preserve the agricultural use of the land and the blending operation clearly violates this purpose.

{¶ 43} Furthermore, we reject the argument that Rocky Ridge is developing the land by incorporation of the spent lime into the soil.  Avoiding the issues relating to the pond, which Benton Township excluded from its claims, the incorporation of the spent lime into the soil is clearly not part of any development of the land.  While Reif testified that adding a certain quantity of lime to soil has an agricultural benefit, there was no evidence presented that this blending operation which incorporates a large concentration of spent lime, and which increases the elevation of the property, improves the agricultural nature of the property.

{¶ 44} Finally, Rocky Ridge argues that the trial court erred in finding that the blending operation is industrial work on A-3 property.  The zoning inspector testified that the heavy industrial nature of the work was the use of heavy equipment to haul, dump, dig, blend, and bury the spent lime/soil mixture.  While the BTZR does not define industrial work, it provides that general industrial work is limited to M-1 zones, restricted industrial work to M-2 zones, and heavy industrial work to M-3 zones.  Therefore, we must apply the common meaning for the term.  "Industrial" means "relating to an industry," which means "a distinct group of productive or profit-making enterprises." https://www.merriam-Webster.com/dictionary/industrial (accessed July 20, 2020). Rocky Ridge asserts that it was not engaged in "manufacturing" because it does not do anything to change the spent lime and merely mixes it with soil.   However, we agree

with the trial court's finding that a commercial operation to dispose of industrial waste qualifies as industrial activity and is at least an M-1 activity.

{¶ 45} Therefore, we find appellant's third assignment of error not well-taken.

**First Assignment of Error**

{¶ 46} On appeal, Rocky Ridge asserts in its first assignment of error that the trial court erred in finding the township zoning ordinances did not conflict with state law when the trial court issued a temporary restraining order and preliminary and permanent injunctions against Rocky Ridge. The company argues state law which authorized the OEPA to grant a LAMP permit to Rocky Ridge to conduct the blending operation on its entire property preempts any Benton Township Zoning Resolutions which interfere with the approved beneficial use of spent lime.

{¶ 47} First, Rocky Ridge argues the trial court erred by failing to find that BTZR Art. I, Secs. 103.7 and 103.8 apply to this case and are preempted by state law because Sec. 103.7 bans the activities state law permits through the LAMP permit and Sec. 103.8 is inapplicable and even it were applicable, also bans landfills throughout the township contra to R.C. Chapter 3734.

{¶ 48} The trial court never specifically addressed this issue. Instead, the trial court found the "Benton Township Zoning regulations do not provide a blanket prohibition of the activity authorized by the LAMP and engaged in by [Rocky Ridge.]"

{¶ 49} In its complaint, Benton Township initially asserted a claim under BTZR Art. I, Secs. 103.7 and 103.8. However, it expressly withdrew this argument during the

22.

preliminary injunction hearing and relies entirely upon a claim based on its authority under R.C. 519.24 to adopt zoning resolutions regarding the use of land "for the purpose of protecting and promoting public health, safety, morals, comfort, and general welfare." BTZR Sec. 101. We reject the argument that Benton Township cannot abandon this claim. Therefore, we find the issue of whether these sections are preempted by general state law and, therefore, are void and unenforceable is no longer an issue in this case.

{¶ 50} Alternatively, Rocky Ridge also argues that Benton Township must utilize Section 103.7 to ban the blending operation because it is the only section in the BTZR that regulates the activity. We disagree. Benton Township is not limited to a single basis for challenging the operations of Rocky Ridge when other resolutions arguably apply.

{¶ 51} Therefore, we find the trial court did not err in failing to address whether these two resolutions conflict with state law.

{¶ 52} Second, Rocky Ridge argues on appeal that allowing Benton Township to utilize zoning laws to prevent Rocky Ridge from conducting the operation permitted under the LAMP permit operates as a ban of an activity permitted under state law. It argues, therefore, that the A-3 zoning classification is preempted because it operates to prohibit what Ohio statewide environmental laws permit.

{¶ 53} Having found the trial court did not err in finding that the BTZR prohibits the blending operation and removal of topsoil on A-3 property, we now consider whether the BTZR as it operates with respect to this property in light of the LAMP permit conflicts with a general state law and, therefore, is preempted.

23.

{¶ 54} A township's authority to adopt and enforce zoning regulations is directly granted to it by the General Assembly through R.C. Chapter 519. R.C. 519.02(A). Pursuant to R.C. 519.02, a board of township trustees can adopt a comprehensive zoning plan to protect the public health, safety and morals. *Set Products, Inc. v. Bainbridge Twp. Bd. of Zoning Appeals*, 31 Ohio St.3d 260, 265, 510 N.E.2d 373 (1987); BTZR Art. I, Sec. 101. The purpose of local zoning is to control land usage in a particular area relating to the development of the community. *Families Against Reily/Morgan Sites v. Butler Cty. Bd. of Zoning Appeals*, 56 Ohio App.3d 90, 93-96, 564 N.E.2d 1113 (12th Dist.1989).

{¶ 55} The General Assembly can expressly prohibit application of local zoning when it desires to do so and has, for example, in the case of hazardous waste facilities approved by the OEPA. R.C. 3734.05(E). Where there is no express preemption, however, courts have held that local zoning ordinances which do not conflict with the general state laws and regulations are enforceable. *Atwater Twp. Trustees v. B.F.I. Willowcreek Landfill*, 67 Ohio St.3d 293, 617 N.E.2d 1089 (1993), paragraph three of syllabus ("township may enforce its anti-nuisance zoning resolution against the operator of a solid waste disposal site"); *Set Products, Inc.* (a surface mine permit does not preempt local zoning ordinances); *Osborne v. Leroy Twp.*, 11th Dist. Lake No. 2014-L-008, 2014-Ohio-5774, ¶ 39 (state law regulating oil and gas activities includes construction and maintenance of roads, but it does not preempt local zoning resolutions prohibiting the storage of road materials). The issue of whether a conflict exists is a

24.

question of law, which we review de novo. *Id.* at ¶ 35. Because both the authority of the township board of trustees to enact zoning laws and the OEPA to oversee the disposal of industrial waste are granted by the General Assembly, we presume the local zoning laws do not conflict with environmental laws and OEPA regulations. *Hulligan v. Columbia Twp. Bd. of Zoning Appeals*, 59 Ohio App.2d 105, 107-108, 392 N.E.2d 1272 (9th Dist.1978).

{¶ 56} Through enactment of R.C. Chapter 3745 the General Assembly established the environmental protection agency to administer the law pertaining in pertinent part to the "disposal and treatment of solid wastes, * * * industrial waste, and other wastes." R.C. 3745.01. The goal of the OEPA is to "[p]romulgate and put into execution a long term comprehensive plan and program to conserve, protect, and enhance the air, water, and other natural resources of the state" and to "[p]revent and abate pollution of the environment for the protection and preservation of the health, safety, welfare, and property of the people of the state." R.C. 3745.011(A) and (B). The General Assembly also created ERAC, which has exclusive jurisdiction over the orders of the director of the OEPA. R.C. 3745.04(B); *State ex rel. Rocky Ridge Development, L.L.C.*, 2017-Ohio-7678, 151 Ohio St.3d, 85 N.E.3d 717, at ¶ 9.

{¶ 57} Therefore, R.C. Chapter 3745 is a general law intended for the state, through the Ohio EPA, to preempt and solely occupy the licensing and regulating the disposal of environmental wastes. *Osnaburg Twp. Zoning Inspector v. Eslich Environmental, Inc.*, 5th Dist. Stark No. 2008CA00026, 2008-Ohio-6671, ¶ 52-54, citing

25.

*Village of Sheffield v. Rowland*, 87 Ohio St.3d 9, 11, 716 N.E.2d 1121 (1999); *Clarke v. Bd. of County Commrs. of Warren County*, 12th App. No. CA2005-04-048, 2006-Ohio-1271, ¶ 27, quoting *Families Against Reily/Morgan Sites v. Butler Cty. Bd. of Zoning Appeals*, 56 Ohio App.3d 90, 94, 564 N.E.2d 1113 (12th Dist.1989). However, permits issued by the OEPA regarding solid waste disposal and sanitary landfill facilities have been found to be subject to local zoning resolutions which do not conflict with state environmental laws and regulations because the two laws serve different purposes. *Newbury Twp. Bd. of Twp. Trustees v. Lomak Petroleum (Ohio), Inc.*, 62 Ohio St.3d 387, 391-392, 583 N.E.2d 302 (1992); *Clarke*; *Dome Energicorp. v. Zoning Bd. of Appeals, Olmsted Township*, 8th Dist. Cuyahoga No. 50554, 1986 WL 7716, *3 (July 10, 1986); *City of Garfield Hts. v. Williams*, 10th Dist. Franklin Nos. 77AP-449 to 77AP-484, 1977 WL 200442, *4 (Sept. 29, 1977).

{¶ 58} The test for determining whether a conflict exists between a township's zoning resolution and R.C. Chapter 3714 is "whether the ordinance permits or licenses that which the statute forbids and prohibits, and vice versa." *Fondessy Enterprises, Inc. v. Oregon*, 23 Ohio St.3d 213, 492 N.E.2d 797 (1986), paragraph two of the syllabus; and *Village of Struthers v. Sokol*, 108 Ohio St. 263, 140 N.E. 519 (1923), paragraph two of the syllabus. Therefore, zoning laws which ban what general state laws allow are invalid and unenforceable. *Center Twp. Bd. of Twp. Trustees v. Valentine*, 6th Dist. Wood No. WD-99-065, 2000 WL 1675511, *2 (Nov. 9, 2000); *Perry v. Providence Twp.*, 63 Ohio App.3d 377, 380-381, 578 N.E.2d 886 (6th Dist.1991).

26.

{¶ 59} In the case before us, the BTZR sections relied upon do not ban blending operations on all land classifications within the township. Benton Township argues the blending operation is an industrial activity and, therefore, can only be conducted on the M-3 property. Rocky Ridge argues that because the LAMP permit allows the blending operation on all of its property, the BTZR sections which would prohibit the operations on A-3 property conflict with state law. We reject the argument of Rocky Ridge.

{¶ 60} The overall purpose of the OEPA is oversee the "disposal and treatment of solid wastes, * * * industrial waste, and other wastes." R.C. 3745.01. The issuance of the LAMP permit is the process through which the OEPA ensures the disposal of wastes complies with national standards and controls the disposal of wastes which will enter state waters for the protection of the health of people. In this case, through the LAMP permit, the OEPA determined how spent lime could be disposed of as a beneficial use as general fill. Thus, the state law only governs how wastes are disposed and whether a particular waste can be disposed of in a beneficial manner. While the LAMP permit allows the use of the blended spent lime/soil mixture as general fill on this agricultural-zoned property, there is no statute which requires that this type of general fill be placed on agricultural-zoned property. Thus the LAMP permit governs proper disposal of the spent lime, while the BTZR zoning classifications and restrictions regulate land use for the health, welfare, and safety of the community. Therefore, we conclude that there is no conflict between the BTZR sections at issue and general state law. Appellant's first assignment of error is not well-taken.

27.

{¶ 61} Having found that the trial court did not commit error prejudicial to appellant and that substantial justice has been done, the judgments of the Ottawa County Court of Common Pleas are affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgments affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

_____
JUDGE

Arlene Singer, J.

_____
JUDGE

Thomas J. Osowik, J.
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.